FRANK FISHER v. JOHN L. ROPER LUMBER COMPANY.

(Filed 10 May, 1922.)

1. **Compromise and Settlement—Contracts—Consideration.**

The plaintiff was injured while in the course of his employment for the defendant, causing, among other things, the amputation of his arm, and while preparing to bring suit for damages upon the alleged negligence of the defendant, was approached by the defendant's superintendent or foreman in charge and control of its employees, who suggested a com-

promise upon condition that the defendant would give him employment such as he was then capable of doing, and pay him a living wage for the support of himself and family for life: *Held*, the compromise being an adjustment of a *bona fide* claim, is a sufficient consideration to support the agreement thus made, whether it was well grounded or not.

2. **Same—Employer and Employee—Master and Servant—Principle and Agent—Ratification.**

A contract by way of compromise to give employment at a living wage to an employee, sufficient for himself and his family, whose arm had been amputated as a result of an injury alleged to have been caused by the defendant employer's negligence, is too unusual to come under the ordinary powers of a foreman or of an agent of more general powers, but may become binding by the knowledge or acquiescence of the owner; as where the defendant employer was a manufacturing plant, mostly owned by one person, who was aware of the injury, and that his company paid the expenses incident thereto, and for years kept this crippled employee on the payroll and paid him the same wages that he had received before the injury, these circumstances being sufficient to impute knowledge to the management of the defendant's plant of the contract agreed upon by its boss or foreman.

3. **Limitation of Actions — Contracts — Breach—Master and Servant— Employer and Employee.**

Where an employee, injured while engaged in his duty to his employer, has compromised his claim for damages by going back to work in a crippled condition under an agreement that he should receive a living wage for life sufficient for the support of himself and family, and upon breach of the employer of this agreement, has been forced to seek employment elsewhere, the fact that he has done so, under the circumstances, will not avoid his recovery in his action upon the compromise agreement, and the statute of limitations will begin to run only from the time of the defendant's breach of the contract.

4. **Contracts—Breach—Uncertainty—Intent—Interpretation.**

The courts look with disfavor upon the destruction of contracts on account of uncertainty, and, when possible, will so construe them as to carry into effect the reasonable intent of the parties.

5. **Same—Employment for Life—Living Wages—Evidence—Damages— Employer and Employee.**

A contract of employment for a living wage for life to an injured employee for himself and family, etc., founded upon a sufficient consideration, is not too uncertain for enforcement, the persons, the purpose, and the time of the contract being given, and the amount capable of reasonable ascertainment from the evidence of the capacity of the employee to earn wages, his physical condition, the number of his family, the cost of necessaries for an ordinary livelihood, together with the mortuary tables, etc., the final amount of the damages for the breach being reduced by such as by diligent effort he would be able to earn under his physical disability.

APPEAL by defendant from *Lyon, J.,* at October Term, 1921, of CRAVEN.

Civil action to recover for a breach of contract for support, and there were facts in evidence on the part of plaintiff tending to show that in 1908 plaintiff, a young married man, then strong and vigorous, was in the employment of defendant company in one of its lumber mills, and in the course of his employment received serious and permanent injuries. Two of his ribs being broken and one of his arms, this last of such a character that it had to be amputated, etc., and otherwise facts in evidence permitting the inference of actionable negligence on the part of the company and its agent. That when plaintiff had returned from the hospital some weeks after the occurrence, and was preparing to bring suit for the wrong done him, he was called into an office of the company by Mr. W. G. Roberts, defendant's foreman in charge and control of the employees and their work in the mill, and was told by him that the company always took care of their men injured in that way; that there was no use to see a lawyer, and if plaintiff would not sue the company would employ him in such work as he could do about the mill in his crippled condition, and for the balance of his life, give him a living wage sufficient for support of himself and family. That plaintiff agreed to the proposition, and in pursuance of the agreement continued in the service of the company receiving fair and adequate wages for his work till 1920, when owing to the rise in cost of living the sum paid him would not keep himself decently clothed or his family from want. Thereupon plaintiff interviewed Mr. John Sutton, then superintendent of defendant company, and told him that the wages paid would not support him and his family. That they were in a suffering condition. That witness was working both week days and Sundays, and was unable to keep himself clothed, and that he had no shoes, and that unless the company gave him an increase he would have to seek work elsewhere, reminded him that the company had agreed to give witness a living wage, and had cut what they had been giving. That the company had for a long time continued to pay witness the same after the injury as before he was crippled, but owing to the increased prices this, as stated, was insufficient to keep him and his family from suffering and want. That defendant not giving any increase in wages, witness quit of necessity and sought and obtained employment for a time with the East Carolina Lumber Company, and worked with them for three or four months, was then taken down sick with influenza and before he recovered that company had gone out of business. That plaintiff had always been ready and willing to comply with his agreement, but is now all broken up and out of employment. That at time of agreement plaintiff's family consisted of one infant child, and they now have three children. That Mr. Roberts, who made the agreement with plaintiff, was operating the mill at the time; Mr. Speight came later as superintendent. That Mr.

Roberts was foreman, and witness didn't know whether he was superintendent or not. There were also facts in evidence on part of plaintiff tending to show that Mr. Roper, the principal owner of the plant, and Mr. Speight, the superintendent, were aware of plaintiff's injury at the time it was received, and of his being at the hospital, that his arm was amputated, and of his being taken back into service at the same wages he formerly received. Defendant denied any and all liability by reason of the alleged negligence, and plead the statute of limitations in bar of recovery on that ground. Defendant also denied liability on the alleged contract, claiming that it had never been made, and if it had, Roberts was without power to bind the company by any such agreement, and offered evidence in support of its position both as to the alleged negligence and as to nonliability on the contract. Defendant further insisted that the agreement, if made, was without valid consideration; and further, that same was too indefinite to afford a basis for recovery. On issues submitted, the jury rendered the following verdict:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: 'No.'

"3. Did the plaintiff and defendant contract, as alleged in the complaint? Answer: 'Yes.'

"4. Has plaintiff been at all times ready, able, and willing to perform his contract, as alleged? Answer: 'Yes.'

"5. Did defendant wrongfully break said contract? Answer: 'Yes.'

"6. Did the plaintiff, by his own conduct, waive said contract? Answer: 'No.'

"7. Is the plaintiff's cause of action barred by the statute of limitations? Answer: 'No.'

"8. What damages, if any, is plaintiff entitled to recover: Answer: '$2,500.' "

Judgment on verdict for plaintiff, and defendant excepted and appealed, assigning errors.

*D. L. Ward and Ward & Ward for plaintiff.*
*Moore & Dunn for defendant.*

HOKE, J. Under the charge of his Honor the verdict has established that there was a breach of the agreement on part of defendant in forcing him to leave their employment by wrongful refusal to give him a living wage, and judgment having been entered for the damages awarded, the defendant objects to the validity of the trial:

1. That there was no consideration for the alleged contract, the facts showing that plaintiff never had a legal claim against the company. This, too, has been resolved by the jury against the defendant, and while there are several exceptions noted to the proceedings in determination of these issues, we do not consider it necessary to refer to them in detail except to say that there were facts in evidence permitting the inference of liability, and if it were otherwise, the evidence, as accepted by the jury, all tended to show that the contract, if made, was by way of compromise and adjustment of a *bona fide* claim on the part of plaintiff against the company. Such an adjustment will afford a sufficient consideration for the agreement whether the claim was well grounded or not. *Dunbar v. Dunbar,* 180 Mass., 170; *Dickerson v. Dickerson,* 19 Ga. App., 269; 6 R. C. L., 662, title Contracts, sec. 71; 5 R. C. L., 890, title Compromise, sec. 13, see generally on Sufficiency of Consideration; *Brown v. Taylor,* 174 N. C., 423; *Spencer v. Bynum,* 169 N. C., 119; *Institute v. Mebane,* 165 N. C., 644.

In the *Massachusetts case* it was held that a compromise cannot be avoided for want of consideration, where made in settlement of a demand arising under a previous agreement between the parties which had been performed for several years, and which one of them insisted was valid and binding. Digest taken from 94 A. S. R., 623. And the principle is well stated in the *Georgia case* as follows: "It is well settled that the law favors compromises, when made in good faith, whereby disputed claims are settled, and especially is this true when related to family controversies; and a promise, when thus made, in extinguishment of a doubtful claim, furnishes sufficient consideration to support a valid contract. While it is not necessary that the contention which forms the basis of such a compromise shall be meritorious in order to support the promise, yet it is essential in order to furnish a consideration therefor, that the contention be made in good faith and be honestly believed in." A position especially exigent here, where the agreement was entered upon and lived up to by the parties for twelve years, and until plaintiff's claim for the injury is otherwise barred by the statute of limitations.

Defendant insists further that there is no evidence of a valid agreement by any one having authority to bind the company. This contract to take on a crippled employee for life is so out of the usual that authority to make it would assuredly not come under the ordinary powers of a mere foreman or boss, or even of an agent of mere general powers. *Stephens v. Lumber Co.,* 160 N. C., 108. But, in addition to the testimony of plaintiff that Roberts, who purported to act for the company, was "operating the mill at the time" there were facts in evidence tending to show that the company paid for the operation amputating plaintiff's arm, and that the owner of the plant and the general

superintendent both personally knew of the injury and the amputation, and that plaintiff was taken back with their employment at the same wages, notwithstanding the loss of his arm, and they knew, or should have known, the condition of his return and the agreement concerning his employment, assuredly they had every opportunity to know, and there were facts sufficient to excite inquiry as to the terms of his further employment. As said in *Powell v. Lumber Co.,* 168 N. C., 632: "The scope of the implied authority of an agent may be extended by acts indicating authority which the principal has approved, or knowingly or, at times, negligently permitted the agent to do in the course of his employment." It appeared that this man, having only one arm, was on the employer's payroll at the price of a full hand for twelve years, and if the management didn't know of the terms of plaintiff's employment their negligence in this respect should be imputed to them for knowledge. Again, it is very earnestly contended by appellant that the contract is too indefinite, and for this reason no recovery can be had thereon. It will be noted that this exception assumes the existence of the contract, and the jury has established it according to plaintiff's version. This being true, there is no uncertainty as to the terms which the parties have selected in which to express their agreement that plaintiff during his life would be given a living wage required for the support of himself and family. The person, the purpose, and the time of the contract are clearly given, and the only objection at all possible would be as to the difficulty in fixing upon the amount to be paid, or the value of the contract to plaintiff in case of breach. It is said by an intelligent writer on the subject that the law does not favor, but leans against, the destruction of contracts on account of uncertainty. Therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intent of the parties, if it can be ascertained. 6 R. C. L., 648. And by another, that this intent may be determined at times by reference to extrinsic facts relevant to the inquiry. 1 Page on Contracts (2 ed.), sec. 101. Applying these principles, and by reference to the facts in evidence, the capacity of the plaintiff to earn wages, his physical condition, the number of his family, the cost of necessaries for an ordinary livelihood, together with the mortuary tables, also in evidence, would, with other facts, afford data, in our opinion, to enable a jury to come to a reasonable estimate as to the value of the contract held by plaintiff, reduced, of course, by the amount he would be able to earn by diligent effort, and in this aspect the case was considered by the jury and the damages awarded. Contracts not dissimilar have been upheld with us and other courts of approved authority. *Rhyne v. Rhyne,* 151 N. C., 400; *Lumber Co. v. Lumber Co.,* 165 Ala., 268; *Henderson v. Spratlen,* 44 Col., 278.

As to the statute of limitations, the suit is on the contract, and in this instance the right of action did not accrue to plaintiff till a breach of same, which occurred in 1920. *Pinnix v. Smithdeal,* 182 N. C., 410.

On careful consideration, we find no reversible error, and the judgment on the verdict is affirmed.

No error.