Kenneth H. BRUNER, II, Plaintiff,

v.

MARJEC, INC., a Maryland Corporation, Defendant.

No. 64–C–26–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Feb. 14, 1966.

J. Sloan Kuykendall, Kuykendall & Whiting, Winchester, Va., R. Sidney Johnson, Washington, D. C., for plaintiff.

Joseph A. Massie, Jr., Massie & Snarr, Winchester, Va., for defendant.

MICHIE, District Judge.

This case arises on the complaint of the plaintiff, Bruner, for injuries suffered due to the negligence of the defendant while he was a guest at the defendant's "Shawneeland" premises in Frederick County, Virginia. By way of answer, defendant alleges that there is no diversity of citizenship between the parties and, therefore, the action should be dismissed for lack of jurisdiction. Plaintiff, in his complaint, alleges that he is a citizen of Virginia residing in Warm Springs, Virginia, and that the defendant is a corporation incorporated in the State of Maryland, having its principal place of business in a state other than Virginia but doing business in Virginia. Defendant traverses the allegation as to its principal place of business and contends that such place is in Virginia and more particularly at its "Shawneeland'" operation in Frederick County. The parties offer the deposition of Don Lamborne, the President of the defendant Marjec, Inc. as evi-

dence from which I am to determine the corporation's principal place of business.

Section 1332(c) of Title 28 U.S.C. was amended in 1958 to provide that a corporation shall be deemed a citizen of the state of its incorporation and also of the state where its principal place of business is located. This latter provision was felt necessary to remedy the situation which existed when a wholly local operation was deemed for diversity purposes a citizen of a foreign state merely because it happened to have been incorporated there. Sen. Rep. No. 1830, 85th Cong., 2d Sess., 1958 U. S. Code Cong. & Adm. News, pp. 3099, 3101–3102.

■■ The test for determining the principal place of business is a factual one which should take into account such facts as the character of the corporation, its purposes, the kind of business in which engaged, and the situs of its operations. Wright, Federal Courts, § 27, (1963 ed.). A review of the authorities discloses that two main tests have evolved in this area. One is the "nerve center or home office" test which gives paramount weight to the location of the home office. Sabo v. Standard Oil Co. of Indiana, 295 F.2d 893 (7th Cir. 1961); Scot Typewriter Co. v. Underwood Corp., 170 F.Supp. 862 (S.D.N.Y. 1959). See 1 Moore, Federal Practice, ¶ 0.77 [3.–2] (2d ed. 1964). However, as Moore points out, this test is peculiarly apropos in cases where the operations of the corporation are diversified in several or more states. Moore, supra, at p. 717.69. In such cases the principal place of business is usually found to be the location of the executive offices from which the corporate activities are controlled and directed. Sabo v. Standard Oil Co. of Indiana, supra; Scot Typewriter Co. v. Underwood Corp., supra. However, the Third Circuit in dealing with a highly diversified corporation placed emphasis on the situs from where the daily operational control of the corporation was conducted as opposed to the "nerve center" approach of emphasizing the place where high-level and over-all corporate policy was made. Kelly v. United States Steel Corporation, 284 F.2d 850 (3d Cir. 1960). See Moore, supra, at p. 717.79.

■ This leads to the second major test for a corporation's principal place of business—the "place of operations" test. See Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F.Supp. 490 (S.D.N.Y.1963); Moore, supra, ¶ 0.77 [3.–3]. As in Kelly, the emphasis is on the center of operations as evidenced by factors such as the situs of tangible assets, physical activities and operational control. Professor Moore indicates that this test is receiving greater application than the "nerve center" test in cases where a corporation has its physical operation in one state and its administrative and executive offices in another.

> Where, however, the corporation has its physical operations concentrated in one state and its administrative or executive offices in another state, the place of operations is more frequently considered as decisive.

Moore, supra, at p. 717.77–78.

I conclude that under the facts of the instant case the "place of operations" test is most suitable for determining the principal place of business of the defendant, Marjec, Inc., in accordance with 28 U.S.C. § 1332(c).

> In most cases, * * * the policies of the statute will be best effectuated by seeking the state on which the corporation most impinges. And this state is more likely to be where the actual physical operations are carried on and directed than the place where occasional high level policy decisions are made.

Moore, supra, at p. 717.82. See, e. g., Inland Rubber Corp. v. Triple A Tire Service, supra; Aron v. Indemnity Ins. Co. of N. America, 200 F.Supp. 147, 148 (N.D.Ill.1961) ("the Chicago office is but an adjunct to the corporation's principal activity which is the conduct of the summer camp in the State of Wisconsin."); Mattson v. Cuyuna Ore Co., 180 F.Supp. 743 (D.Minn.1960).

> [This State] is likely to be where the bulk of its litigation would take

place, where the corporation has most of its dealings with its customers and has its greatest contact with the public in general, where it derives its greatest gross income, and where it is considered to be at home.

Moore, supra, at p. 717.81 (footnotes omitted).

■ Reading this in light of the facts relating to the activity of the defendant Marjec, Inc. adduced from the deposition of its president, Mr. Lamborne, it is more than evident that its principal place of business is Virginia, where it operates its sole activity, "Shawneeland," and not Maryland where it is incorporated and where its executive offices are located.

Reviewing the facts, it appears that the corporation was organized as a Maryland corporation around 1949 with the president, his wife and father as directors, all having residences in Maryland. Its sole purpose seems to be the development of real estate and operation of a country club at "Shawneeland." At the time of this suit its only real estate holdings were in Frederick County, Virginia, and comprised close to 9,000 acres known as "Shawneeland." The nature of its operation was defined as "the sale of lots as a country club development and mountain retreat. The operation of that development and the facilities contained in the development." The land is operated and owned by the corporation which has sold approximately 5% of it in lots and constructed roads and recreational facilities.

While the executive office is located in Maryland and staffed by three full-time employees and one part-time employee, it is clear from the deposition that the corporation "impinges" most upon the State of Virginia. Its registered agent is located in Virginia as well as its attorney. All deeds for sale of property are prepared and 95% of the transactions are closed in Virginia. The corporation maintains accounts in three Virginia banks and it is from these that the corporation has borrowed money to finance its developments at Shawneeland. In addition, it also maintains an account at one Maryland bank, but the majority of the corporation's cash reserves is in the Virginia banks.

Since this development in Virginia is the only activity presently engaged in by the corporation, it follows that the corporation has its greatest contact with the public and with customers in Virginia. Though its books and records are kept at the offices in Maryland, its gross income is derived from the Virginia operation and it pays income taxes in Virginia and not in Maryland.

The policies for the overall operation of the corporation are usually made in Virginia and the day to day management of the property and sales is conducted in Virginia by Mr. Tom Rosenberger who is the general manager in charge of the entire operation of Shawneeland including the facilities and property. Mr. Rosenberger has authority to draw on the Virginia bank accounts and does so as required in day to day operation. He also supervises the employee staff at Shawneeland which numbers about 14, as compared with the 4 or so employees at the office in Maryland, and shares concurrent authority with the president as to hiring and firing of personnel.

The sales manager is a Mr. Pat Cecchini, who lives in Virginia and very seldom visits the Maryland office, preferring instead to consult with the president by phone.

In sum it seems clear that the corporation can be considered to be "at home" in Virginia and that, because of its operations here, it would not be subject to local prejudices which the framers of Article III intended to protect foreign citizens against. Wright, Federal Courts, § 23 (1963 ed.).

I hold that the defendant, Marjec, Inc., has its principal place of business in Virginia. As a result, there is no diversity of citizenship and therefore no jurisdiction in this court to try this cause. Accordingly, this suit will be dismissed.