**CAROLINA CARBON AND STAINLESS PRODUCTS, INC., Plaintiff,**

v.

**IPSCO CORPORATION, Defendant.**

**No. C–C–85–555–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

May 19, 1986.

Dale S. Morrison, Campbell, Morrison & Bush, Charlotte, N.C., for plaintiff.

Philip M. Van Hoy, Mullins & Van Hoy, Robert E. Henderson, Henderson & Shuford, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant IPSCO Corporation's Motion to dismiss Plaintiff Carolina Carbon and Stainless Products, Inc.'s action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court lacks jurisdiction over the subject matter. The Plaintiff's action involves state-law questions based on the Defendant's alleged breach of its duty to pay for over $10,000 worth of supplies it purchased through open accounts with the Plaintiff in Charlotte, North Carolina and Houston, Texas. The Plaintiff admits that it is a citizen of North Carolina inasmuch as it is incorporated and has its principal place of business in this state. This Court may entertain the Plaintiff's suit only if the Defendant is a citizen of a state other than North Carolina. *See* 28 U.S.C. § 1332.

The Court notes at the outset that the "policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction." *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). That statute was amended in 1958 by increasing the required amount in controversy for invoking federal diversity jurisdiction to $10,000 and by adding the following subsection to the statute:

(c) For purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.

28 U.S.C. § 1332(c).

The amendments to the diversity statute were designed to reduce the number of cases entering the federal courts solely on the basis of diversity of citizenship. *See Kelly v. United States Steel Corporation,* 284 F.2d 850, 852 (3d Cir.1960). The Fifth Circuit has noted that the addition of subsection (c) "prevents a corporation, essentially local, from taking advantage of being chartered in a foreign state. At the same time it also prevents local residents from taking advantage of the fact that a company has a foreign charter." *Canton v. Angelina Casualty Co.,* 279 F.2d 553, 554 (5th Cir.1960). Since the purpose of diversity jurisdiction is to protect out-of-state parties from any prejudice they might experience in state court, there is no reason for a federal court to entertain a state-law dispute between two corporations who are "at home" in the same state as there should be no implied local prejudices against either party. *See Northeast Nuclear Energy Co. v. General Electric Co.,* 435 F.Supp. 344, 346 (D.Conn.1977); *Bruner v. Marjec, Inc.,* 250 F.Supp. 426, 428 (W.D.Va.1966).

■ The Plaintiff has alleged in its Complaint that the Defendant is "incorporated under the laws of the State of Delaware with a principal place of business in Bala-Cynwyd, Pennsylvania." Complaint, ¶ 2. The Defendant has challenged that allegation through its Motion to dismiss by stating that that its principal place of business is in Charlotte, North Carolina. Once the jurisdictional allegations of a Complaint are challenged, the Plaintiff has the burden of establishing them with competent proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). The crucial date for the determination of the Defendant's citizenship is, of course, the date the Complaint was filed. *See Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 261 (4th Cir.1974).

In determining where the Defendant has its principal place of business for purposes of diversity jurisdiction, the Court may consider two approaches that have been employed by other courts. One view, known as the "nerve center" test, is that a corporation's principal place of business is where the executive and administrative offices are located, from which the corporation's officers direct, control, and coordinate its policies and activities. *See Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959). This test was developed for the situation in which a corporation is engaged in multistate activities with offices or plants in various states. *See id.* at 864–865. The other approach, known as the "place of activities or operations" test, focuses on where the corporation carries out the bulk of its activities as evidenced by the location of its physical assets and daily production or services activities rather than high-level policymaking. *See Kelly v. United States Steel Corp.*, *supra*, at 854; *Bruner v. Marjec, Inc.*, *supra*.

The Fourth Circuit recognized these two lines of authority on the determination of a corporation's principal place of business in *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir.1974). In *Mullins*, the Fourth Circuit ordered the district court to determine whether there was diversity of citizenship between the parties within the meaning of § 1332(c). It directed the attention of the district court and the parties to the two approaches noted above to facilitate the resolution of that question, but it "intimat[ed] no view as to which of these positions [it] will ultimately adopt." *Id.* The Court merely suggested that the district court could facilitate the ultimate disposition of the question by making findings of fact material to both theories. *Id.*

The evidence submitted by the Plaintiff to support its allegation that the Defendant's principal place of business is in Bala-Cynwyd, Pennsylvania consists of the affidavits of three former employees of the Defendant, the affidavit of the Plaintiff's President, Micky F. Smith, and the affidavit of Robert E. Tutterow, a current shareholder of the Defendant's parent corporation and former President of another subsidiary of the parent corporation who was involved in the acquisition of the Defendant by Bowline Corporation. None of these affiants was directly associated with the Defendant at the time the Complaint was filed, which, as noted above, is the crucial date for the determination of the Defendant's citizenship.

The three former employees who submitted affidavits in support of the Plaintiff's contention that the Defendant's principal place of business is in Pennsylvania are William Lynch, who was employed by the Defendant in Charlotte as its National Sales Manager from July 1982 to October 1983 and as its General Manager from October 1983 to March 1984, Berger Affid. ¶ 2, Zelinski Dep. p. 70; James F. Berger, who was employed in Charlotte as the Defendant's Manager of Purchasing from October 1980 to March 1984, Lynch Affid. ¶ 2, Zelinski Dep. pp. 52–53; and Ronald G. Armstrong, who worked for the Defendant from December 1980 to March 1984 and from July 1984 to July 27, 1985, and whose last position with the Defendant was Charlotte Branch Manager. Armstrong Affid. ¶ 2, Zelinski Dep. p. 54. All three affiants were fired by the Defendant in March 1984.

Zelinski Dep. p. 58. Berger is currently employed by the Plaintiff, and Armstrong is employed by Consolidated Mechanical Supply, whose majority owner is also the President of the Plaintiff. Zelinski Dep. p. 53.

In support of its Motion to dismiss for lack of diversity, the Defendant has submitted the affidavit of John G. Zelinski, who has been the Defendant's Vice President and General Manager since May 1985. Both parties have submitted Mr. Zelinski's deposition. The Plaintiff has done so for the purpose of attacking the credibility of certain statements in Zelinski's affidavit; the Defendant has directed the Court's attention to the portions of the deposition that bolster its claim that the bulk of the Defendant's corporate operating and management activity takes place in Charlotte.

The Defendant also has tendered letters sent to its Charlotte counsel by Clifford Demarest, Chairman and President of the Defendant and at least one other subsidiary of the Defendant's parent corporation. Attached to those letters are pictures of a sign in the reception area and the front door of the building in Pennsylvania where Demarest works and a memorandum from Robert Tutterow concerning Bowline Corporation's acquisition of the Defendant. The Court, however, cannot consider those letters or attachments in conjunction with the Defendant's Motion to dismiss, as they have not been authenticated nor sworn to by way of affidavit.

Having thoroughly reviewed the affidavits and deposition submitted by the parties, the Court finds that those documents reveal the following information about the Defendant and its operations:

(1) Defendant IPSCO Corporation is a distributor of pipes, valves, and fittings. It has been a wholly owned subsidiary of Bowline Corporation of Bala-Cynwyd, Pennsylvania since 1980. Zelinski Affid. ¶ 2.

(2) The Defendant has branch offices and warehouses in Knoxville, Tennessee; Baton Rouge, Louisiana; Wilmington, North Carolina; and Charlotte, North Carolina. Zelinski Dep. p. 17. Each branch has its own Branch Manager whose office is located at the individual branch. Zelinski Dep. p. 45. Although the Branch Managers do the interviewing and actual hiring of prospective employees for the warehouses at each branch, they do not have the authority to hire or fire employees without the approval of Vice President and General Manager John G. Zelinski, to whom they apparently report. Zelinski Dep. pp. 41, 54, 64–65.

(3) Zelinski, who was hired in May 1985 by the Defendant's President and Chief Executive Officer to serve as the Defendant's Vice President and General Manager, has his office in Charlotte, North Carolina. Zelinski Dep. pp. 6, 42. Other officers and managers located in Charlotte, North Carolina are the Corporate Secretary, the Manager of Purchasing (who was hired by Zelinski), and the Controller/Manager of Accounting. Zelinski Dep. pp. 42, 65. None of these persons has an office outside of Charlotte, and no other office of the Defendant has anyone holding these positions or performing the functions of these positions. Zelinski Dep. p. 55. The identity of the Defendant's Treasurer and his location have not been established by either party. Zelinski Dep. pp. 42–43.

(4) Clifford J. Demarest has been the Defendant's Chairman and Chief Executive Officer since 1983. Armstrong Affid. ¶ 6; Zelinski Dep. p. 38. He has served as the Defendant's President since May 1985. Zelinski Dep. p. 38. Demarest also serves as President and Chief Executive Officer for two other subsidiaries of Bowline Corporation. Zelinski Dep. p. 51. His office is in Bala-Cynwyd, Pennsylvania, where the Defendant's parent corporation is located. Zelinski Dep. 5, 74.

(5) The previous three Presidents of the Defendant had their offices in Char-

lotte, North Carolina. Zelinski Dep. pp. 51–53.

(6) Vice President and General Manager Zelinski reports directly to President and Chief Executive Officer Demarest. Zelinski Dep. p. 40. Zelinski talks with Demarest at least once a week to keep him informed about the Defendant's operations, Zelinski Dep. p. 39, and sends Demarest the Defendant's financial statements on a monthly basis. Zelinski Dep. pp. 39, 84. Zelinski and Demarest do not meet personally on a regular basis; some months they meet once, other months they do not meet at all. Zelinski Dep. pp. 18, 57. The meetings they have had since Zelinski was hired have all been held in Charlotte. Zelinski Dep. p. 57. It appears that Demarest has not visited the Defendant's offices in any cities other than Charlotte. Zelinski Dep. p. 18.

(7) At least since Zelinski was hired, Demarest has not been involved on a daily basis in the operations of the Defendant. Zelinski Dep. p. 67. Zelinski makes the direct decisions about the day-to-day operations of the Defendant such as the sales decisions and the general hiring and firing of employees. Zelinski Dep. pp. 23, 39.

(8) The sales function of IPSCO is carried out in each branch location but is supervised and directed out of Charlotte. Zelinski Dep. p. 56. Two of the Defendant's former employees who submitted affidavits on behalf of the Plaintiff state that all sales directives and senior management directives were made from Bala-Cynwyd, Pennsylvania during their employment. Berger Affid. ¶ 5; Armstrong Affid. ¶ 5. Zelinski disputes their assertion and insists that at least since the time he was hired, such directives have been made from Charlotte. Zelinski Dep. p. 72.

(9) In the past, review and collection of accounts receivable and delinquent accounts were handled in Bala-Cynwyd. Lynch Affid. ¶ 4; Berger Affid. ¶ 5; Zelinski Dep. pp. 44, 69–70. In approx-

imately May 1984, however, a Credit Manager was hired for the Defendant and all accounts receivable and overdue accounts were turned over to Charlotte. Zelinski Dep. pp. 44, 70. As of the time the Complaint was filed in this case, the Defendant's review of accounts payable and collection of accounts receivable were being handled in Charlotte. Zelinski Dep. pp. 23, 72.

(10) The Defendant's invoicing is done in Charlotte. Zelinski Dep. pp. 23, 72. A daily run of the Defendant's invoices to its customers is mailed to Demarest in Pennsylvania. Zelinski Dep. pp. 73, 84.

(11) The planning for the Defendant's advertising is conducted in Charlotte. Zelinski Dep. p. 56.

(12) All purchases must be approved by the Manager of Purchasing in Charlotte, and major purchases must be approved by Zelinski. Zelinski Dep. pp. 58, 73–74. Purchase orders do not have to be approved by anyone in Bala-Cynwyd, Pennsylvania. Zelinski Dep. pp. 57–58, 74.

(13) All of the Defendant's bills, including its attorney's fees in this matter, are paid out of Charlotte. Zelinski Dep. pp. 43, 56. Indeed, the Plaintiff's President sent his demand letter concerning the Defendant's overdue account to Zelinski in Charlotte, and only a copy of that letter to Demarest in Pennsylvania. Zelinski Dep. pp. 59–60 and Defendant's Exhibit 2. The Plaintiff's attorney sent a similar demand letter to Zelinski in Charlotte without sending a copy to anyone in Pennsylvania. Zelinski Dep. p. 59 and Defendant's Exhibit 1. Further, a letter to Demarest from the Plaintiff's attorney seeking money allegedly owed to Ronald Armstrong, one of the Plaintiff's affiants, was addressed and sent to the Defendant's *Charlotte* office. Zelinski Dep. pp. 63–64 and Defendant's Exhibit 6.

(14) Corporate records maintained in Charlotte include the personnel records for

the employees of all branches, the Defendant's profit and loss statements, checking accounts, accounts payable and receivable records, and purchase orders. Zelinski Dep. pp. 45–46. Corporate records not kept in Charlotte include Demarest's personnel file, the Defendant's bylaws, the minutes of the meetings of the Board of Directors and shareholders, the Defendant's corporate charter, and the Statement of Authority to do business filed with the Secretary of State of North Carolina. Zelinski Dep. pp. 4, 43, 45–46 and Plaintiff's Exhibit 1.

(15) The Defendant's Board of Directors does not meet in Charlotte. Zelinski Dep. p. 43.

■ It appears to the Court that the Defendant is engaged in multistate activities with offices and warehouses in several states. Although it is not clear that the Charlotte branch/warehouse does a greater volume of business than the other branches, it is clear that the scope of activities of the corporate office in Charlotte exceeds the scope of activities of the Defendant's offices in other states, including Pennsylvania. In addition to purchasing and selling pipes, valves, and fittings, which is done at all of the Defendant's branches, the Charlotte office handles the accounting, advertising, and personnel record-keeping functions of the corporation. Further, while the ultimate management responsibility for the Defendant may rest with President and Chief Executive Officer Demarest in Pennsylvania, the Court finds that the employees primarily involved in the day-to-day management of the Defendant's overall operations are based in Charlotte, North Carolina. It is thus evident that the bulk of the Defendant's daily operating and management activity is centered in North Carolina.

The Court concludes that the Defendant's principal place of business is in Charlotte, North Carolina and that, therefore, the Defendant is a citizen of North Carolina under 28 U.S.C. § 1332(c). Because the Plaintiff is also a citizen of North Carolina, the Court does not have jurisdiction over its state-law claims against the Defendant.

Having decided that the Plaintiff has failed to establish that diversity of citizenship exists between the parties, the Court must dismiss this action pursuant to the Defendant's Motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court notes that it is dismissing the Plaintiff's action without reaching the merits of its claims; therefore, the dismissal shall be without prejudice to the Plaintiff's right to reinstate its action in a proper forum.

Because the Court has determined that it does not have jurisdiction over the subject matter of this action, it will not address the Plaintiff's Motion to Compel Defendant to Answer or Enter Defendant's Default or the Plaintiff's Motion for Summary Judgment. With respect to the Defendant's Motion for Sanctions, the Court has reviewed the Motion and the Plaintiff's response and is of the opinion that the Motion should be denied.

NOW, THEREFORE, IT IS ORDERED that:

(1) The Defendant's Motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED;

(2) The Court will not address the Plaintiff's Motion to Compel Defendant to Answer or Enter Defendant's Default or the Plaintiff's Motion for Summary Judgment;

(3) The Defendant's Motion for Sanctions is DENIED; and

(4) This action is DISMISSED WITHOUT PREJUDICE.