**James P. KRISTUFEK, Plaintiff,**

v.

**SAXONBURG CERAMICS, INC., Defendant.**

**No. 3:94CV153–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

July 15, 1994.

See 60 F.3d 823.

Harry B. Crow, Jr., Monroe, NC, for
James P. Kristufek.

James P. Kristufek, Monroe, NC, pro se.

Randel E. Phillips, Moore and Van Allen, Charlotte, NC, David I. Cohen, Robert F. Prorok, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Saxonburg Ceramics, Inc.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court on Defendant's motion to dismiss the amended complaint, filed June 24, 1994.[1] Plaintiff filed its response to the motion to dismiss on June 7, 1994. Defendant filed a reply brief on June 24, 1994.

Also before the Court is Plaintiff's motion to remand, filed June 7, 1994. Defendant filed its response to this motion on June 24, 1994. The Court has carefully reviewed these motions. Based upon this review, the Court makes the following legal conclusions.

In this action, Plaintiff is seeking damages for breach of an employment contract he entered into with Saxonburg Ceramics, Inc. (Saxonburg). Plaintiff is a North Carolina resident. Saxonburg is a Pennsylvania corporation. Saxonburg's corporate offices, and managerial personnel are located in Saxonburg, Pennsylvania which is also the meeting place of its board of directors. Saxonburg collects its outstanding bills, pays its accounts payable (including corporate taxes), makes its purchasing decisions and orders, and approves all employee salary adjustments from its plant in Saxonburg, Pennsylvania. Affidavit of Furman South. Of Defendant's 144 employees, 82 are located in Pennsylvania and 62 in its North Carolina plant.

Plaintiff's amended complaint alleges Defendant, sometime in mid–1986, asked him to relocate to Union County, North Carolina to work in a new manufacturing plant Saxonburg built in the early 1980's. Defendant agreed to this request after receiving "promises by the defendant to the plaintiff which included the promise that the plaintiff, if he moved to Union County, North Carolina, to work for the defendant, would have his job with the defendant until he retired." Amended Complaint, pp. 1, 2 ¶ 7.

Relying upon this promise, Plaintiff agreed to move to Union County, North Carolina where he satisfactorily performed his employment duties until May 15, 1992 when he was dismissed due to corporate "restructuring." *Id.* at p. 2 ¶ 12.

## PLAINTIFF'S MOTION TO REMAND

The Court will first resolve the motion to remand to determine whether this Court properly has jurisdiction over this action.

On May 9, 1994, Defendant removed this breach of contract action pursuant to 28 U.S.C. § 1441(a) from the Union County Superior Court because this action obtains the original jurisdiction conferred upon federal courts by 28 U.S.C. § 1332(a)(1) for persons of diverse state citizenship. Motions to remand cases from federal courts must be granted, and a removed case remanded to the state court from which it arrived "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction. . . ." 28 U.S.C. § 1447(c).

"[T]he diversity statute w[as] designed to reduce the number of cases entering the federal courts solely on the basis of diversity of citizenship." *Carolina Carbon and Stainless Products, Inc. v. IPSCO Corp.*, 635 F.Supp. 305, 306 (W.D.N.C.1986). Accordingly, § 1332 provides original jurisdiction in the federal courts "where the matter in controversy exceeds the sum or value of $50,000 . . . and is between citizens of different States. . . ." 28 U.S.C. § 1332(a)(1). "The crucial date for the determination of the Defendant's citizenship is, of course, the date the Complaint was filed." *Carolina Carbon*, 635 F.Supp. at 307; *citing, Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 261 (4th Cir.1974).

---

1. On May 16, 1994, Defendant filed a motion to dismiss Plaintiff's original complaint. Plaintiff followed this motion with a motion to amend his complaint filed on June 7, 1994. Federal Rule of Civil Procedure 15(a) provides, "A party may amend the party's pleading once as a matter of course. . . . Fed.R.Civ.P. 15(a). The Court accordingly grants the motion to amend. The Court will also deny as moot Defendant's original motion to dismiss the unamended complaint.

■ A corporate defendant is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). Corporations may have multiple citizenship. Defendant is a Pennsylvania corporation and is plainly a citizen of that state. Thus, the Court must determine whether it is also a citizen of North Carolina. The indices of citizenship which guide this inquiry, known colloquially as the "nerve center" and "bulk of activity" tests, have been considered alternative lines of analysis for determining corporate citizenship. Neither of which is preferable to the other in the Fourth Circuit. *Mullins,* 489 F.2d at 262.

The Fourth Circuit has suggested that district courts "could advance the ultimate disposition of this question considerably by making findings of fact which are material to *both* theories." *Id.* This Court has consistently considered both indicators of corporate citizenship useful in elucidating the question and thus analyzes it by considering both the corporate "nerve center" and the place where the "bulk of activities" occurs in determining it's citizenship. *Carolina Carbon,* 635 F.Supp. 305.

■ The "nerve center" test focuses on the "corporation's principal place of business ... where the executive and administrative offices are located, [and] from which the corporation's officers direct, control, and coordinate its policies and activities." *Id.* at 307. The "bulk of activities test," not surprisingly, looks to "where the corporation carries out the bulk of its activities as evidenced by the location of its physical assets and daily production or services activities rather than high-level policymaking." *Id.*

■ Because of the lack of evidence relevant to the "bulk of activities" test presented in the affidavits and exhibits presently before the Court, it will confine its analysis, roughly speaking, to the "nerve center" standard.[2] Certainly, this standard fits the facts presented in this case since, "This test was developed for the situation in which a corporation is engaged in multi-state activities with offices or plants in various states." *Carolina Carbon,* 635 F.Supp. at 307. When examined under the "nerve center" standard, the Court believes Saxonburg's neural hub is in Pennsylvania and that it is therefore a citizen of Pennsylvania within the meaning of § 1332(c).

■ The only evidence before the Court indicates all decisions vital to Defendant's corporate life; its bill paying and collecting, employment decisions, and planning activities are conducted in Pennsylvania. Defendant's board of directors and its officers are located in that state. Saxonburg's crucial decisions, ranging from long and short range planning to which bills are paid and when, issue from and are made in the Pennsylvania plant. It purchases its manufacturing material and equipment from Pennsylvania and does its accounting for the North Carolina plant there too. The Court therefore finds that Saxonburg's nerve center is in Pennsylvania. Thus, the Court concludes it is a citizen exclusively of Pennsylvania for purposes of § 1332(c). Therefore, since this action obtains original jurisdiction by virtue of the complete diversity of citizenship between the present litigants, the motion to remand must be denied.

### THE MOTION TO DISMISS

■ Rule 12(b)(6) places the burden upon the party seeking dismissal to demonstrate the non-moving party has stated no facts in its complaint which entitle it to relief. In evaluating such a motion, the Court must assume all well pled facts are true and draw all reasonable inferences from those facts in favor of the non-moving party. *Miree v.*

2. The Court acknowledges that Plaintiff submitted evidence that Defendant's Union County facility was purchased at a cost of approximately $1,700,000.00 and that it possesses approximately $2,767,652.00 in personal property located in Union County. Yet, these numbers are worthless without some evidence about the relative value of Defendant's assets located in Pennsylvania by which a comparison can be made. Additionally, the Court notes there is no evidence before it to support a comparison between the output from Defendant's Pennsylvania and North Carolina plants. Regardless, the Court need not resolve whether both bases of citizenship are satisfied since it is sufficient to determine Saxonburg's citizenship, as the Court will do, under the "nerve center" analysis.

*DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Consequently, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957).

In the amended complaint, Plaintiff contends he and Saxonburg had an employment contract which Saxonburg breached when it terminated Plaintiff on May 15, 1992 either because it was a contract for a definite period or was one backed by additional consideration. Defendant moves the Court to dismiss this breach of contract action because Plaintiff's employment status was simply that of an employee terminable at will. Thus, Defendant concludes, since there was neither a contract for a definite duration nor one supported by additional consideration, Plaintiff can state no claim for relief resulting from a breach of an employment contract.

■■■ The long-established, firmly settled employment law of North Carolina is "that, 'in the absence of an employment contract for a definite period, both employer and employee are generally free to terminate their association at any time and without any reason,' or for an irrational or arbitrary reason." *McMurry v. Cochrane Furniture Co.,* 109 N.C.App. 52, 425 S.E.2d 735, 737 (N.C.App.1993); *quoting, Salt v. Applied Analytical, Inc.,* 104 N.C.App. 652, 655, 412 S.E.2d 97, 99 (1991); *disc. rev. denied,* 331 N.C. 119, 415 S.E.2d 200 (1992) (*citing, Still v. Lance,* 279 N.C. 254, 182 S.E.2d 403 (1971); *also citing, Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989).[3] Thus, "[i]f an employment contract contains no provision concerning the duration of the employment or the means by which it may be terminated, such a contract is terminable at the will of either party, irrespective of the quality of performance by the other party." *Iturbe v. Wandel & Goltermann Technologies, Inc.,* 774 F.Supp. 959,

960 (M.D.N.C.1991). Stated conversely, North Carolina law recognizes that employees and employers are free to terminate their employment relationships for a host of reasons, or no reason at all, unless they have created an employment contract specifying a definite duration of employment. It is not enough to establish an employment contract. Apart from specified statutory exceptions, the contract must also contain an additional condition requiring a define term of employment before it is taken out of the terminable at will rule. *Buffaloe v. United Carolina Bank,* 89 N.C.App. 693, 366 S.E.2d 918, 920 (N.C.App.1988) ("where a contract for employment does not fix a definite term, it is terminable at the will of either party, with or without cause except ... where the employee is protect from discharge by statute.")

This standard of law works to the benefit of the employee as much as it does to that of the employer. It leaves both free to order their affairs and remain bound to each other according to their respective best interests. An at will employee who is offered greener pastures is at liberty to end an employment relationship with his employer, no matter how crucial that employee is to the employer's enterprise or how long his services have benefitted his employer. Similarly, the employer is privileged to rid itself of an employee who either does not satisfy the employer's unique objectives and replace that person with someone who does, or choose to end the employment of an employee for other reasons which benefit the well being of the employer and the remaining employees. Thus, on balance, the law of North Carolina contemplates as more compatible with liberty leaving those choices made in employment relationships to employees and employers without interference by the law. In sum, "[a]lthough the terminable-at-will rule may be falling out of favor in other jurisdictions, its continued vitality in North Carolina is clear." *House v. Cannon Mills Co.,* 713 F.Supp. 159, 164 (M.D.N.C.1988).

■■■ The employment at will doctrine is not exceptionless. Even when employment

---

**3.** *See also, Harris v. Duke Power Co.,* 83 N.C.App. 195, 349 S.E.2d 394, 395 (N.C.App.1986 *aff'd,* 319 N.C. 627, 356 S.E.2d 357 (1986), *Roberts v.* *Wake Forest University,* 55 N.C.App. 430, 434, 286 S.E.2d 120, *disc. rev. denied,* 305 N.C. 586, 292 S.E.2d 571 (1982).

is at the will of the employer or employee, there remain two instances in which the law will intercede to restrict an employer's or employee's freedom. The first exception favors employees. This exception to the employment at will doctrine applies when an employee has been terminated for reasons contrary to the law or those which are said to offend public policy. *Coman*, 325 N.C. 172, 381 S.E.2d 445 (defining public policy as "the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* 325 N.C. at 175 n. 2, 381 S.E.2d at 447 n. 2 *citations omitted.*)[4] Thus, even if an employee is employed at the will of his employer, if his termination is premised upon a violation of the public good the law will intervene and prevent the terminable at will rule from operating fully. Nothing in this case implicates *Coman's* public policy exception to the terminable at will rule.

The second exception, depending on the facts at issue, favors both employers and employees. This exception is known as the "additional consideration" rule. While at first stated quite broadly in *Sides*, it has since been "narrowly construed...." *McMurry*, 425 S.E.2d at 738. "One variant of this exception is when the employee is injured through the negligence of the company, and the employer and employee reach an agreement that the employee will drop all tort claims against the company in exchange for a promise of permanent employment." *Iturbe*, 774 F.Supp. at 961.[5] This variant of the employment at will doctrine is also inapposite on the facts before the Court.

A second version of this exception is implicated where the employee leaves one job and moves to another city to take a different job. North Carolina's Court of Appeals has stated the rule accordingly, "[w]here the employee gives some special consideration in addition to his services, such as ... removing his residence from one place to another in order to accept employment ... such a contract may be enforced." *Burkhimer v. Gealy*, 39

N.C.App. 450, 454, 250 S.E.2d 678, 682 (1979), *citing, Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 139 S.E.2d 249 (1964).

In applying *Burkhimer* and *Tuttle*, the North Carolina Court of Appeals in *Sides*, 328 S.E.2d at 828, appeared to state the additional consideration rule so broadly that it required merely a promise of employment except for incompetence coupled with "[t]he additional consideration that ... [one] move...." *Id.* It is now clear that the additional consideration rule has not been expanded so broadly as *Sides* intimated.

In a later opinion applying the additional consideration rule, the Court of Appeals confined the *Sides* opinion by explaining its application of the rule as involving one who's move involved "foregoing career opportunities." *Buffaloe v. United Carolina Bank*, 89 N.C.App. 693, 366 S.E.2d 918, 921 (N.C.App. 1988). The *Buffaloe* court reasoned that the additional consideration rule was inapplicable within the context of an employee who left one town to take a position in another with the same employer. That court observed the employee, "did not forgo any other employment opportunities, and he merely moved in order to receive a promotion within the same bank." *Id.* The *Buffaloe* court, citing *Burkhimer*, ultimately held the additional consideration rule inapplicable to the facts before it because "[p]laintiff moved in order to get a promotion and *not to accept a new job.*" *Id.* (emphasis added).

After *Buffaloe*, it is now clear that a move alone is not sufficient additional consideration to bring an employment contract out of the terminable at will doctrine. The move must be made "in order to accept employment...." That is, one must move to take a *new* job, opting for alternate career opportunities with a different employer, rather than merely to obtain a promotion within an existing employment relationship with one's present employer. *Id., quoting, Burkhimer*, 39 N.C.App. at 454, 250 S.E.2d at 682. Other

---

4. *See also, Sides v. Duke University*, 74 N.C.App. 331, 342, 328 S.E.2d 818, 826, *disc. rev. denied*, 314 N.C. 331, 335 S.E.2d 13 (1985).

5. *Citing, Dotson v. F.S. Royster Guano, Co.*, 207 N.C. 635, 178 S.E. 100 (1935); *Stevens v. South-*

*ern Railway Co.*, 187 N.C. 528, 122 S.E. 295 (1924); *Fisher v. John L. Roper Lumber Co.*, 183 N.C. 485, 111 S.E. 857 (1922).

federal district courts applying this body of North Carolina law have concurred in this reading of the state of North Carolina employment law. As one such court put it, "[r]ecognition of a general exception whenever relocation or a job change is involved would emasculate the terminable-at-will rule, because many if not most hirings involve either a job change or a change of residences or both." *House*, 713 F.Supp. at 164.[6]

Turning to the present case, the Court believes the contract Plaintiff and Saxonburg entered was one for employment terminable at the will of either party, and is not one which comes within the limited exceptions to the employment at will rule. The Court so concludes for the following reasons.

■ The contract as issue was not for a definite term of employment. According to the amended complaint, "[plaintiff] agreed to move to Union County, North Carolina, and work with the defendant at its plant ... upon promises by the defendant [that he] ... would have his job with the defendant until the plaintiff retired." Amended Complaint, pp. 1, 2 ¶ 7. North Carolina courts have unambiguously said the agreement must, "fix a definite term ..." *Burkhimer*, 250 S.E.2d 678 at 680, *Buffaloe*, 366 S.E.2d at 920, of employment to become something other than one terminable at the will of employer or employee. *See also*, *McMurry*, 425 S.E.2d at 737. Said differently, the employment contract must not "in some form purport to provide for permanent employment, as where the agreement is for the employee to have a permanent position ... for ... as long as the employee desires the position...." *Tuttle*, 139 S.E.2d at 251, *citing*, 56 C.J.S. *Master and Servant* § 31. North Carolina's courts

have applied this rule to a host of circumstances, each of which were found to inadequately define the duration of employment sufficient to exclude the contract from the terminable at will presumption.[7]

■ The Court notes, "The burden to establish the specific duration of the employment contract lies with the employee." *McMurry*, 425 S.E.2d at 737. Plaintiff's contract was for employment until he retired. A term of employment until retirement is hardly a fixed period of time capable of exact measurement. It is quintessentially indefinite because the time at which retirement will occur almost always depends upon the unilateral decision of the employee, but is equally almost never tied to a certain date. It is not a determinate, measurable period of time if only because it is unknown at least by the employer, and usually also by the employee until the decision to retire is actually made. Unless the time of retirement is set at a date certain in the future, conditioning employment until the employee decides to retire is nothing more or less than conditioning employment upon the will of the employee.

That is to say, employment "until retirement" is indefinite employment unless the employee brings it to an end or "for ... as long as the employee desires the position." *Tuttle*, 139 S.E.2d at 251. Since employment "until retirement" is not employment for a fixed duration, it is, according to the general rule of law in North Carolina, presumed to be employment terminable at the will of either employer or employee. *McMurry*, 425 S.E.2d at 737. By promising to employ Plaintiff until he retired, "[D]efendant provided nothing more than a gratuitous prom-

---

**6.** *See also, Iturbe*, 774 F.Supp. at 961 (not foregoing other career opportunities and merely moving insufficient to implicate additional consideration under *Buffaloe*), *Strickland v. MICA Information Systems*, 800 F.Supp. 1320, 1327 (M.D.N.C.1992) ("This Court does not read the North Carolina law to imply as a condition of every employment agreement that whenever a person changes residences to accept or maintain employment she may thereafter be terminated only if her performance becomes unsatisfactory").

**7.** *See, Still*, 279 N.C. at 259, 182 S.E.2d 403 ("a regular permanent job" is terminable at will); *Tuttle*, 263 N.C. at 219, 139 S.E.2d 249 ("employment for life" is "nothing more than one of indefinite hiring, terminable at will.); *Malever v. Kay Jewelry Co.*, 223 N.C. 148 at 149, 25 S.E.2d 436 at 437 (1943) ("permanent employment" terminable at will); *Fisher v. John L. Roper Lumber Co.*, 183 N.C. 485, 111 S.E. 857 (1922) (for life indeterminate duration); *Dotson v. F.S. Royster Guano Co.*, 207 N.C. 635, 178 S.E. 100 (1934) (same); *Jones v. Carolina Power & Light Co.*, 206 N.C. 862, 175 S.E. 167 (1934) ("at least ten years" indefinite).

ise of continued employment," *Id.* at 739, in exchange for Plaintiff's promise to move. That is precisely the case here.

 Having concluded Plaintiff was an employee subject to a contract of employment terminable at the will of his employer, it remains for the Court to decide whether this employment at will arrangement is subject to the limited exceptions to this general rule. The only conceivable exception applicable on the facts before the Court is that provided for in the "additional consideration" line of cases. The *Buffaloe* decision makes clear that this exception does not apply here and remove Plaintiff's employment agreement from the terminable at will general rule. The amended complaint states Plaintiff "began working for Saxonburg Ceramics, Inc. in 1962, in Saxonburg, Pennsylvania" where he "was employed as a production supervisor." Amended Complaint, p. 1 ¶'s 3, 4. After Saxonburg decided to establish a manufacturing plant in North Carolina in 1986, "defendant ... asked the plaintiff to move from Pennsylvania to Union County, North Carolina, *to work at the defendant's place of business....*" Plaintiff accepted this offer and moved to North Carolina from Saxonburg, Pennsylvania to take a position with the same employer in a different state. Clearly, "moving from one town to another is not always sufficient to constitute additional consideration." *McMurry*, 425 S.E.2d at 738. Just as surely, moving from one place to another while remaining employed by the same employer does not amount to "foregoing career opportunities" but "merely [a] move[ ] in order to receive a promotion with the same [employer which is] not sufficient additional consideration to remove this case from the employment-at-will doctrine." *Buffaloe*, 366 S.E.2d at 921. Therefore, the Court concludes Plaintiff is not entitled to avail himself of the "additional consideration" exception to the employment at will doctrine.

Accordingly, since Plaintiff was an employee terminable at the will of his employer, and is not availed of the exceptions to the terminable at will doctrine, the Court concludes Defendant was not precluded from terminating Plaintiff as an at will employee. Thus,

the Court must grant Defendant's motion to dismiss.

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff's motion to remand be, and hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend his complaint be, and hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss be, and hereby is, **GRANTED.**