ARBEE MECHANICAL
CONTRACTORS, INC.,
Plaintiff,

v.

CAPITAL SUN
CORPORATION, Defendant.

Civ. A. No. 87-1096-A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 11, 1988.

Philip J. Walsh, Charles J. O'Hara, Bromley, Brown & Walsh, Falls Church, Va., for plaintiff.

John J. Sabourin, Jr., Fairfax, Va., for defendant.

## ORDER

ELLIS, District Judge.

■ This diversity contract dispute comes before the Court on the eve of trial on a motion to dismiss for lack of subject matter jurisdiction. Rule 12(b)(1), Fed.R. Civ.P. While some motions might be impermissibly tardy if filed this close to trial, those calling into question subject matter jurisdiction must be considered and resolved whenever filed.[1] Subject matter jurisdiction cannot be waived or conferred on the Court by agreement.[2] It is fundamental to the Court's power to adjudicate. Accordingly, the Court has entertained the motion, reviewed the parties' briefs and affidavits, heard oral argument and requested supplemental filings, all toward the end of appropriately resolving this matter.

At oral argument, it appeared to the Court that the factual record was insufficiently developed and unclear. Thus, the Court required the parties to file a list of uncontested jurisdictional facts, as well as a list of those contested, noting for the latter the bases for each dispute. The parties did so and the Court, after taking into

---

**1.** *See Louisville & N.R. Co. v. United States,* 106 F.Supp. 999 (W.D.Ky.1952) (although motion to dismiss for lack of jurisdiction was not filed until ten days after all the evidence in case had been received, delay did not bar consideration, as such motion may be made at any time, even in the Supreme Court *sua sponte* ), *aff'd on other grounds,* 221 F.2d 698 (6th Cir.1955).

**2.** *See Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (parties may not create or destroy jurisdiction by agreement or consent).

account the parties' submissions and their oral arguments, now reluctantly concludes that this matter must be dismissed for want of subject matter jurisdiction, i.e., the lack of diversity jurisdiction.

## Facts

The dispositive facts are largely uncontested and may be succinctly stated.[3] This is a contract dispute between a general contractor, the defendant, and an HVAC subcontractor, the plaintiff. Plaintiff claims defendant wrongfully withheld monies due and owing under certain contracts, whereas defendant contends some payments were made but later ones withheld because plaintiff had failed to perform under the contracts. The contracts covered work relating to the supply and installation of HVAC at construction projects in Virginia.

It is uncontested that defendant is a Virginia corporation with its principal place of business also in Virginia. It is also uncontested that plaintiff is an Illinois corporation. Sharply contested is whether plaintiff's principal place of business is in Virginia or Illinois. The facts pertinent to the dispute are enumerated below:[4]

1. Arbee is duly organized and existing under the laws of the State of Illinois.

2. In October 1987, Arbee was a closely-held corporation incorporated under the laws of Illinois.

3. In October 1987, Arbee's President, Ross Bahcall, lived in Illinois. Other officers and directors of Arbee are all members of Mr. Bahcall's family and reside in Illinois, with the exception of a son-in-law who resides in Colorado.

4. In October 1987, Arbee did not do any HVAC installation or service in Illinois.

5. From 1987 until the present, Arbee has performed almost all of its HVAC installation work in Virginia.

6. In October 1987, Arbee's bookkeeper and auditor resided in Illinois.

7. Most of Arbee's laborers working out of its Virginia office in 1987 were Virginia residents.

8. In the second half of 1987, Ross Bahcall traveled to Northern Virginia on Arbee's business one to two times a month, spending an average of three days per trip.

9. In October 1987, Arbee had an office in Maywood, Illinois, and an office in Springfield, Virginia.

10. From October 1, 1986 to August 1987, Arbee performed HVAC work at nine sites, seven of which were in Virginia and two of which were in Maryland. Four Virginia sites were Capital Sun projects.

11. Arbee is licensed to do business as a foreign corporation in the states of Virginia and Maryland.

12. In October 1987, Arbee had an office in Springfield, Virginia that had eight employees: an office manager; a field superintendent; and six HVAC laborers. Yet throughout 1987, Arbee had approximately 35 to 45 employees. This number varied according to Arbee's workload. The vast majority were from Virginia.

13. In October 1987, Arbee had bank accounts in both Illinois and Virginia. The Illinois bank financed Arbee's daily operations. Yet Arbee paid its Virginia employees by wiring money from its Illinois account to its Virginia account and then having its office manager in Virginia prepare the payroll and make payment in Virginia from the Virginia account.

14. Arbee has periodically performed HVAC work in Virginia for at least ten years.

---

**3.** At the hearing on the motion to dismiss on April 1, 1988, the Court concluded that the factual record on jurisdictional matters was insufficiently focused or developed. Accordingly, the parties were directed to meet and agree on as many facts as possible. Unresolved factual disputes were also to be listed. The facts adopted here are taken from the parties' submissions.

**4.** Numbers one through eleven are not contested by the parties. Numbers twelve through eighteen are found by the Court on the basis of the record and the parties' written submissions.

15. In October 1987, Arbee hired HVAC mechanics as needed by having its office manager in Virginia run advertisements in D.C. and Virginia newspapers. Arbee's Virginia office would take applications and the Virginia office manager would discuss these applications by telephone with Ross Bahcall in Illinois, who would make the hiring decisions.

16. Arbee's bids for HVAC work are prepared in and submitted from Illinois.

17. Plans and drawings for Arbee's HVAC work are prepared in Illinois.

18. Arbee's financial and business records are prepared and maintained almost exclusively in Illinois. Yet Arbee maintains hourly employee time sheets, payroll records, local office supply records, and design drawings in Virginia.

### Analysis

The dispositive legal principles, save one, are not in substantial dispute. We begin with the settled rule that once the jurisdictional allegations of a complaint are challenged, the plaintiff has the burden of establishing them with competent proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Defendants specifically contest the jurisdictional allegation that its principal place of business is in Illinois. Defendant contends it is Virginia.

 The diversity statute, 28 U.S.C. § 1332(c) provides, in essence, that a corporation is deemed for diversity purposes to be a citizen of its state of incorporation and of the state where it has its principal place of business. This determination focuses chiefly on the date the action is filed. As one court put it, "[t]he crucial date for the determination of … citizenship is, of course, the date the complaint was filed." *Carolina Carbon and Stainless Products,*

*Inc. v. IPSCO Corp.*, 635 F.Supp. 305, 307 (W.D.N.C.1986). In certain circumstances, however, it may be appropriate to examine corporation activities that antedate the filing of suit for a reasonably brief period of time. *See, e.g., Co–Efficient Energy Systems v. CSL Industries, Inc.*, 812 F.2d 556 (9th Cir.1987); *Scot Typewriter v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y. 1959).

Over the years, two tests have emerged for determining a corporation's principal place of business. First, the "nerve center" test, applied by some courts, places chief emphasis on the locus of a corporation's administrative and executive decision-making. *See* 1 *Moore's Federal Practice* § 0.77[3.–4] (1986). Typically, courts have limited the "nerve center" test to situations where corporations are engaged in far-flung and varied activities in numerous states. *Id.; see also Carolina Carbon and Stainless Products, Inc. v. IPSCO Corp.*, 635 F.Supp. 305, 307 (W.D.N.C. 1986). The second test is the "place or bulk of operations" test which places chief emphasis on where a corporation carries on the bulk of its operational and production activities. *See* Wright, Miller & Cooper, 13B *Fed.Prac. & Procedure* § 3652 at 625–28 (1984).

The Fourth Circuit has not definitively decided whether one of the tests is more appropriate than the other in all contexts. *See Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260 (4th Cir.1974).[5] Indeed, the Court of Appeals may have deliberately eschewed such a definitive direction, recognizing that one test may be more appropriate than the other in certain contexts. Selection of the appropriate test in each case must take due account of the policy goal Congress sought to achieve in amending § 1332, the diversity statute, in 1958. That

5. In *Mullins,* the Fourth Circuit requested that the district court determine whether there was diversity of citizenship between the parties. The court recognized that "two divergent approaches" existed in determining the citizenship of a corporation, the "home office" ("nerve center") approach and the "bulk of activities" approach. The court, however, intimated "no view" as to which of these positions it would

ultimately adopt. 489 F.2d at 262. On remand, the district court applied both approaches, but ultimately found that the "bulk of activities" approach should control because the corporation in question "[was] not a highly diversified company dealing in varied activities in different states." *Mullins v. Beatrice Pocahontas Co.*, 374 F.Supp. 282, 285 (W.D.Va.1974), *aff'd without opinion,* 530 F.2d 969 (4th Cir.1975).

goal, succinctly put, was to reduce federal court case load by narrowing the scope of diversity. *See* Wright, Miller & Cooper, 632; J. Moore & D. Wickstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited*, 77 Harv.L.Rev. 1426, 1432 (1964). In this context, the congressional policy goal strongly suggests that the plaintiff's principal place of business be determined by reference to the bulk of operations text.

> The legislative history of the statute [28 U.S.C. § 1332(c) ] supports the conclusion that emphasis should typically be placed on the locus of operations rather than where the policy making functions are carried out.

Wright, Miller & Cooper, 13B *Federal Practice and Procedure*, § 3625, at 633 (1984).

The "nerve center" test seems appropriate only where a corporation is engaged in multi-state activities in offices and plants in different states.[6] *See Mullins v. Beatrice Pocahontas Co.*, 374 F.Supp. 282, 285 (W.D.Va.1974), *aff'd without opinion*, 530 F.2d 969 (4th Cir.1975). As this record reflects, that is not the case here. Instead, the instant facts seem to be precisely those that call for the application of the "bulk of operations" test. *See Mullins*, 374 F.Supp. at 285. As one pair of eminent commentators put it,

> [w]here a corporation has its executive or administrative offices in one state and its physical operations wholly or predominately in another state, courts have generally agreed with the *Inland* case finding the latter [the place of physical operations] to be the principal place of business.

J. Moore & D. Wickstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited*, 77 Harv.L.Rev. 1426, 1432 (1964). Professors Wright, Miller, and Cooper reached the same conclusion, noting in their treatise that

> [w]here a corporation is engaged in a single line of business with its operating functions located in one state and its executive and administrative offices in another state, its principal place of business for diversity purposes is the former state [where its operating functions are located]."

Wright, Miller & Cooper, 13B *Federal Practice and Procedure*, § 3625, at 633 (1984).

■ Measured by the bulk of operations test, plaintiff's principal place of business is plainly Virginia. The facts compel this conclusion. During the relevant time period, Arbee performed almost all of its HVAC installation work in Virginia; none was performed in Illinois. Arbee's production activities are in Virginia, not Illinois. Arbee's laborers and other non-executive personnel are chiefly residents of Virginia and hired through the Virginia office. They are paid in Virginia from funds sent to a Virginia bank from Illinois. The pay records are maintained in Virginia. During the relevant time period, Arbee's president, Ross Bahcall, spent considerable time in Virginia to conduct Arbee business. Clearly, the bulk of Arbee's operations, during the relevant time period, took place in Virginia. Accordingly, for the purposes of the instant case, Arbee's principal place of business is in Virginia, therefore no diversity jurisdiction exists.

This result is also consistent with the underlying purpose of diversity jurisdiction. Diversity was designed to protect nonresidents from local prejudice by deeming a corporation to be a citizen of the state where it conducts the bulk of its operations and where its public contacts are more numerous. In so doing, the underlying policies of diversity jurisdiction are advanced. Given the extent of plaintiff's operations and public contacts in Virginia, plaintiff can hardly be said to be a stranger to the Commonwealth. Nor can plaintiff seriously contend that it will suffer prejudicial

---

6. The "nerve center" test "was developed for the situation in which a corporation is engaged in multistate activities with offices or plants in various states." *Carolina Carbon and Stainless Products, Inc. v. IPSCO Corp.*, 635 F.Supp. 305, 307 (W.D.N.C.1986) (citing *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 864–65 (S.D.N.Y.1959)).

treatment as a stranger at the hands of Virginia courts.

Accordingly, the complaint and the counterclaims are dismissed for want of subject matter jurisdiction. The parties will bear their own costs.