**A. William REID, Plaintiff**

**v.**

**John J. BOYLE, Cellar Door Venues, Inc., and Cellar Door Productions of Virginia, Inc., Defendants.**

**No. CIV. A. 2:98cv131.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 24, 1998.

Susan Roussel Blackman, Willcox & Savage, William Edward Rachels, Jr., Willcox & Savage, Norfolk, VA, Kevin Edward Martingayle, Stallings & Richardson, P.C., Glenn Randall Croshaw, Willcox & Savage, Moody E. Stallings, Jr., Stallings & Richardson, PC, Virginia Beach, VA, for Plaintiff.

J. Tracy Walker, IV, Christian & Barton, Richmond, VA, Michael W. Smith, Christian, Barton, Epps, Brent & Chappell, James Edward Moore, Christian, Barton, Epps, Brent & Chappell, Richmond, VA, Joseph Lawrence Lyle, Jr., Kaufman & Canoles, PC, Virginia Beach, VA, for Defendants John J. Boyle, Cellar Door Venues, Inc., Cellar Door Productions of Virginia, Inc.

Randall Mahlon Blow, Virginia Beach City Attorney's Office, Virginia Beach, VA, Richard Jay Beaver, Office of City Attorney, Leslie Louis Lilley, Office of City Attorney, Virginia Beach, VA, Stephen Edward Noona, Kaufman & Canoles, PC, Norfolk, VA, for movants City of Virginia Beach, William W. Harrison, Jr., City Councilmember, The Daily Press, Inc., Ernie Gates, Sam McDonald.

## OPINION AND ORDER

CLARKE, District Judge.

This matter is presently before the Court on Plaintiff William A. Reid's Motion to Remand. For the following reasons, Reid's motion is GRANTED.

### I.

Reid is a resident of Virginia Beach and has served as the President and Registered Agent for Cellar Door Venues, Inc. (hereinafter "CD Venues") since its creation in 1995. Reid was also employed as President of Cellar Door Productions of Virginia, Inc. (hereinafter "CD Productions").

John J. Boyle is a resident of Florida and the majority owner of numerous Cellar Door companies, including CD Venues and CD Productions.

CD Venues is a company incorporated in Florida that was organized for the purpose of entering into agreements with the City of Virginia Beach for the construction and operation of an amphitheater. CD Venues currently owns a leasehold interest in the GTE Virginia Beach Amphitheater (hereinafter "the Amphitheater") which is located in Virginia Beach, Virginia. CD Venues promotes special events only for the Amphitheater.

CD Productions is a company incorporated in Virginia. CD Productions promotes special events and entertainment at venues in Norfolk and Virginia Beach.

Reid was employed by CD Productions from approximately 1981 to December 1997 and served as its President from approximately 1983 until his termination. While President, Reid worked under an agreement with Boyle whereby Reid and Boyle divided all profits of CD Productions equally. In 1992, at the demand of Boyle, Reid signed a written contract which reaffirmed their 50/50 split of those profits. In his capacity as President of CD Productions, Reid spearheaded the efforts to develop an amphitheater in Virginia Beach and to form a public-private partnership with the City to support the project. He also booked various concerts for the Amphitheater.

In approximately 1995, Reid and Boyle agreed that Reid would have a one-third (1/3) interest in the Amphitheater project. In June 1997, Reid sent Boyle a hand-written memorandum confirming this agreement. The memorandum was never repudiated or canceled. Reid also personally committed himself as a guarantor on a Letter of Credit to enable CD Venues to meet its contractual obligations.

At the conclusion of each of the Amphitheater's 1996 and 1997 concert/event seasons, Reid asked Boyle and his agents for an accounting of the Amphitheater business to determine Reid's share, but despite repeated assurances that information would be forthcoming, Reid was never given such information. Throughout the summer of 1997, the peak business season for CD Productions and the Amphitheater, Boyle and his agents reassured Reid repeatedly that money would be sent to him for the 1996 Amphitheater season, and that he would be issued his agreed upon portion of stock in CD Venues, i.e. the Amphitheater.

Boyle sent Reid a proposed new written agreement regarding Reid's interest in the Amphitheater by letter dated November 14, 1997. To Reid, this new proposal represented a radical and unacceptable departure from the prior understanding and agreement of 1995. When Reid did not accept Boyle's new proposal, Boyle sent his agent, Dave Williams, Chief Operations Officer of Cellar Door, to Virginia Beach to terminate Reid. Williams arrived in Virginia Beach on December 30, 1997, and terminated Reid as President and an employee of CD Productions.

Reid has neither received his one-third (1/3) interest in the Amphitheater, nor his share of its profits for the 1996 and 1997 seasons. Reid has also not received approximately $21,000 for his share of the profits from CD Productions for the 1996 calendar year.

On January 8, 1998, Reid filed a Bill of Complaint in Virginia Beach Circuit Court against Boyle, CD Venues, and CD Productions. Reid asserts four claims in his Bill of Complaint against each of the three defendants: 1) breach of contract, 2) equitable estoppel, 3) unjust enrichment, and 4) fraud and misrepresentation.

On February 6, 1998, Defendants filed a Notice of Removal to Federal Court and based their action upon diversity of citizenship in accordance with 28 U.S.C. § 1332. Reid filed his Motion to Remand on February 27, 1998. Defendants responded on March 13, 1998 and Reid replied on March 19, 1998. On April 20, 1998, the Court heard argument on Reid's Motion to Remand.

The parties have briefed and argued the issue and neither side has requested time for further discussion. Therefore the Court considers the matter ripe for decision on the record that is now before the Court.

## II.

■ Under 28 U.S.C. § 1441(b), in diversity cases removal is proper only if none of the defendants "properly joined and served" is a citizen of the State in which the action is brought. 28 U.S.C.A. § 1441(b)(West 1994). The party seeking removal bears the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994); *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. *Mulcahey*, 29 F.3d at 151; *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). If federal jurisdiction is doubtful, a remand is necessary. *Mulcahey*, 29 F.3d at 151.

## III.

Reid bases his Motion to Remand back to state court on a lack of subject matter jurisdiction and asserts that there is not complete diversity between himself and CD Venues or CD Productions. Reid asks this Court to award his costs and reasonable attorneys' fees in connection with his Motion to Remand.

The Defendants make two arguments to support their claim that this Court has subject matter jurisdiction based on complete diversity pursuant to 28 U.S.C. § 1441(b). First, they argue that CD Venues is a Florida citizen for purposes of diversity. Second, they argue that CD Productions, the Virginia corporate defendant, is not a proper party, but has been fraudulently joined as a party to defeat the diversity jurisdiction of this Court.

### A.

■ A corporation is deemed for diversity purposes to be a citizen of its state of incorporation and the state where it has its principal place of business under the diversity statute. 28 U.S.C.A. § 1332(c) (West 1993). The Fourth Circuit recognizes two tests for determining a corporation's principal place of business. First, the "nerve center" test which places chief emphasis on the locus of a corporation's administrative and executive decision-making. *Arbee Mechanical Contractors v. Capital Sun Corp.*, 683 F.Supp. 144, 146 (E.D.Va.1988); *see* 1 *Moore's Federal Practice* § 0.77[.3–4] (1986). Typically, courts have limited the "nerve center" test to situations where corporations are engaged in far-flung and varied activities in numerous states. *Id.; see Grimm v. Plasma Processing Corp.*, 888 F.Supp. 56, 58 (S.D.W.Va. 1995); *see also Carolina Carbon and Stainless Products, Inc. v. IPSCO Corp.*, 635 F.Supp. 305, 307 (W.D.N.C.1986). The second test is the "place" or "bulk of operations" test which places chief emphasis on where a corporation carries on the bulk of its operational and production activities. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3625 (2d ed.1984).

■ The Fourth Circuit has not definitively decided which test is more appropriate than the other in all contexts. *Arbee*, 683 F.Supp. at 147; *See Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260 (4th Cir.1974).[1] Selection of the appropriate test in each case

---

1. The Fourth Circuit requested the district court to determine whether there was diversity of citizenship between the parties. The Court recognized that two divergent approaches existed in determining the citizenship of a corporation, but did not intimate which view it would ultimately adopt. On remand the district court applied both approaches, but ultimately found that the "bulk of activities" approach should control because the corporation in question "[w]as not a highly diversified company dealing in varied activities in different states." *Mullins*, 374 F.Supp. 282, 285 (W.D.Va.1974), *aff'd without opinion*, 530 F.2d 969 (4th Cir.1975).

must be made with regard for the policy goal Congress sought to achieve in amending § 1332, the diversity statute, in 1958. That goal, succinctly put, was to reduce federal court case load by narrowing the scope of diversity. *Arbee*, 683 F.Supp. at 147. In cases where most of a corporation's business activities take place in one state, while the executive and administrative functions take place in another, the congressional policy goal strongly suggests that the corporation's principal place of business be determined by reference to the bulk of operations or activities test.

> The legislative history of the statute [28 U.S.C. § 1332] supports the conclusion that emphasis should typically be placed on the locus of operations rather than where the policy making functions are carried out.

*Id.;* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3625 (2d ed. Supp. 1997). On the other hand, the "nerve center" test seems appropriate only where a corporation is engaged in multi-state activities in offices and plants in different states. *Arbee,* 683 F.Supp. at 147; *See Mullins,* 374 F.Supp. at 285.

■ It is uncontested that CD Venues is incorporated in Florida. The disputed issue is whether CD Venues' principal place of business is Florida or Virginia. The following facts are relevant to the issue in dispute:[2]

1. CD Venues is organized under Florida law and it has always maintained its principal business office in Florida. Its stock is owned entirely by Boyle, who resides in Florida.

2. CD Venues was established for the sole purpose of leasing an amphitheater in Virginia Beach.

3. As of December 1995, two directors reside in Florida, one resides in Virginia, one resides in South Carolina, and one resides in Michigan.

4. All the corporate organizational records, minute books, annual financial statements, and corporate financing documents are maintained in Florida.

5. CD Venues mainly promotes for, operates, and manages the Amphitheater. It also gives advice to the Classic Amphitheater in Richmond, Virginia.

6. CD Venues owns a leasehold interest in the real property and improvements of the Amphitheater in Virginia Beach.

7. CD Venues invested approximately $7.5 million dollars in the construction of the Amphitheater and in related leases. All of the bank loans necessary to finance this investment were negotiated by CD Venues' Florida office and made by First Union National Bank through its Florida offices. The lines of credit obtained by Venues to support the day to day operations of the Amphitheater were negotiated by First Union through its Florida office.

8. CD Venues maintains its bank accounts at Princess Anne Bank in Virginia. CD Venues does not have any bank accounts outside of Virginia. Its employees are paid in Virginia through the bank account at Princess Anne Bank and the operating expenses of CD Venues are paid through an account at Princess Anne Bank. At least one letter of credit in the amount of $696,000 was provided by Princess Anne Bank in Virginia Beach as financing for the construction of the Amphitheater.

9. The accounting firm that performs financial accounting services for CD Venues is located in Virginia. The Grant Thornton office in Tidewater, Virginia locally handles the books and records for the Amphitheater.

10. The employees of CD Venues perform their duties at the amphitheater site itself and at administrative offices at 305 Lynnhaven Parkway in Virginia Beach, Virginia.

11. The managers and employees who conduct the day-to-day operations for CD Venues live and work in Virginia. Reid, the past president, lives and worked in Virginia Beach. Mike Tabor, the General Manager of the Amphitheater lives and works in Virginia Beach. Bobby Melatti, Vice President and Production Manager of the Amphitheater, lives and works in Virginia Beach. Wilson Rogers, a Cellar Door officer in charge of the

---

**2.** The facts adopted here are taken from the affidavit of Reid, the deposition of Boyle, and the affidavit of A.J. Wasson, Executive Vice-President, Secretary and Treasurer of CD Venues.

Cellar Door amphitheaters, lives and works in Virginia. Dave Williams, Chief Operating Officer for Cellar Door, lives and works in Virginia.

12. The 401K employee retirement and benefit plan is managed and maintained by the Florida office of CD Venues.

13. A great deal of what CD Venues does occurs in Virginia. As with other Cellar Door entities, Venues receives some direction and administrative services from Cellar Door Management, which is an entity located in Ft. Lauderdale, Florida. Cellar Door management provides certain administrative services for numerous other Cellar Door entities, in addition to CD Venues. The individuals in Florida who provide executive and administrative services for the various Cellar Door entities are Boyle and Wasson, and they are not full-time employees of CD Venues.

14. Other aspects of the Amphitheater business are conducted in South Carolina and Florida. Wilson Howard books entertainment acts for the Amphitheater from his office in South Carolina. Before the Amphitheater's General Manager can incur any expenditure in excess of $5,000.00 for capital improvements or unbudgeted operational expenses, he is required to obtain the approval of Boyle or Wasson from the Florida office. CD Venues purchases all insurance relating to the Amphitheater through its Florida office.

15. CD Venues does not own any tangible assets in South Carolina or Florida. It does not produce or promote any concerts in South Carolina or Florida. It does not employ any full-time employees in South Carolina or Florida.

The case *Arbee Mechanical Contractors, Inc. v. Capital Sun Corp.*, 683 F.Supp. 144 (E.D.Va.1988) is directly on point with the facts of the present case. In *Arbee* the corporation whose principal place of business was in question was incorporated in Illinois and registered to do business in two other states, Virginia and Maryland. *Id.* The owners and all but one of the officers and directors lived in Illinois. The corporation

maintained its executive and administrative offices in Illinois, which was also the location of its financial records. This Court focused on the fact that most of the corporation's physical operations occurred in Virginia. The corporation was in the business of providing HVAC contracting service, and almost all of its HVAC installation work was performed in Virginia. Most of the company's employees worked and lived in Virginia. The corporation had bank accounts in both Illinois and Virginia. Its employee paychecks were issued from the Virginia account, with money wired to the Virginia bank from the Illinois account. *Id.*

This Court applied the bulk of operations test to the facts in *Arbee* and found that the corporation's principal place of business for purposes of diversity of citizenship was where the bulk of operations took place. 683 F.Supp. at 147. Arbee's principal place of business was Virginia because it performed its actual services for customers there. *Id.* Consequently, the corporation was a citizen of Virginia for purposes of diversity of citizenship.

The "place" or "bulk of operations" test is likewise the appropriate test to apply to the facts of the present case. CD Venues is incorporated in Florida, but carries out the bulk of its activities in Virginia. It is not engaged in multi-state activities with offices in various different states. The uncontested facts establish that Virginia is the location of CD Venues' principal services and business activities. CD Venues exists to operate the Virginia Beach Amphitheater. CD Venues derives its revenues from operation of the Amphitheater. The physical operations of the Amphitheater occur in Virginia Beach and are carried out by employees who work and live in Virginia. These employees are paid in Virginia through a Virginia bank.

While various administrative activities of CD Venues occur in Florida and the booking of many acts appearing at the Amphitheater is handled by Wilson Howard in South Carolina, these facts do not require this Court's application of the "nerve center" or "total activities"[3] tests. CD Venues does not con-

---

**3.** Defendants argue that there is not a single forum where all of CD Venues' business operations occur, so this Court should apply the "total

activities test" which is a hybrid of the "nerve center" and "bulk of the operations test." Defendants cite no cases from the Fourth Circuit or

duct activity or have offices outside Florida and Virginia and Wilson Howard is not an employee of CD Venues. The facts indicate that the bulk of operations or activities of CD Venues takes place in Virginia. Therefore, CD Venues is a citizen of Virginia for diversity purposes. Accordingly, complete diversity between the parties is defeated, which requires this Court to remand the matter back to state court pursuant to 28 U.S.C. § 1447(c).

### B.

 Where a party claims that a plaintiff has fraudulently joined a nondiverse defendant to defeat diversity jurisdiction, the Fourth Circuit requires the removing party to establish that a nondiverse defendant has been fraudulently joined. The removing party must establish either:

> "[T]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or
>
> [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

*Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993) (emphasis in original); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor. *Marshall,* 6 F.3d at 232; *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir.1992). A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted. 14A Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3723 (2d ed.1985).

 Defendants have not however, shown outright fraud in Reid's pleadings; therefore, Defendants must show that there is no possibility that Reid could establish a cause of action against CD Productions. Defendants argue that Reid's claim seeking a

share of stock in and profits from the Amphitheater can not be satisfied by CD Productions, therefore CD Productions has been fraudulently joined as a party to this suit.

In making their argument, Defendants overlook the fact that as President of CD Productions, Reid was entitled to a fifty percent share of its annual profits according to the 1992 agreement between Boyle and himself. Despite this agreement, Reid claims that he has not been paid approximately $21,000 for the 1996 calendar year and he seeks this amount from CD Productions in his breach of contract claim. Consequently, Reid has stated a claim against CD Productions that is validly before the Court and CD Productions is a proper party in this matter.

CD Productions' status as a Virginia citizen also defeats complete diversity and does not satisfy the jurisdictional requirement of 28 U.S.C. § 1441(b). Accordingly, this Court must grant Reid's Motion for Remand pursuant to 28 U.S.C. § 1447(c).

### IV.

This case is not before the Court on a federal question and complete diversity between the plaintiff and the defendants does not exist. Accordingly, the Court GRANTS Reid's Motion to Remand, and this matter is DISMISSED for want of subject matter jurisdiction.

The parties shall bear their own costs. It does not appear to the Court that removal of this case was made in bad faith. The matter merited considerable thought and research, and its resolution was not obvious at the outset. Therefore the Court DENIES Reid's request for costs and attorneys' fees incurred in connection with this Motion to Remand.

Defendants have also filed a Motion to Dismiss in this matter on February 13, 1998. That motion is moot given the Court's action taken in this Opinion and Order.

district courts in the Fourth Circuit for this proposition, and this Court can find no binding precedent for applying this test.

The Clerk is DIRECTED to mail a copy of this Opinion and Order to counsel for the Plaintiff and counsel for the Defendants.

IT IS SO ORDERED.