**PAYPHONE LLC, Plaintiff,**

v.

**BROOKS FIBER COMMUNICATIONS OF RHODE ISLAND; Cable & Wireless, Inc., Defendants.**

No. 00–024L.

United States District Court, D. Rhode Island.

Jan. 3, 2001.

John D. Deacon, Medeiros & Sanford, Inc., Providence, RI, for Plaintiff.

Benjamin V. White, III, Vetter & White, Providence, RI, for Defendant Brooks Fiber Communications of Rhode Island.

James McKay, Todd D. White, Adler Pollock & Sheehan, Providence, RI, for Defendant Cable & Wireless, Inc.

### DECISION AND ORDER

LAGUEUX, District Judge.

This is an appeal from an order of United States Magistrate Judge David L. Martin denying plaintiff's motion to remand this case to state court. The issue presented is whether a subsidiary corporation may pierce its own corporate veil in order to create diversity jurisdiction by attributing the great-grandparent corporation's principal place of business to itself. For the reasons that follow, this Court concludes that it cannot. Accordingly, the appeal is sustained and the motion to remand is granted.

### I. Background and Procedural History

Plaintiff PayPhone LLC ("PayPhone") operates pay telephones throughout New England and maintains its principal place of business in Rhode Island. Defendant Brooks Fiber Communications of Rhode Island ("BFC–RI"), a Delaware corporation, contracted with PayPhone to provide services as a competitive local exchange carrier for PayPhone's telephones in the Rhode Island area. In addition, PayPhone engaged defendant Cable & Wireless, Inc. ("C & W"), a District of Columbia corporation that maintains its principal place of business in Virginia, as its long distance carrier for all direct-dial, coin-paid, long distance telephone calls.[1]

From approximately May 1, 1999 to June 15, 1999, a high volume of fraudulent long distance telephone calls were made from plaintiff's pay telephones in Rhode Island by callers utilizing an inactive and invalid toll-free number. The calls, which were placed mainly to Puerto Rico and the Dominican Republic, were put through after traveling across BFC–RI's access lines to a BFC–RI switch. This switch returned an open secondary dial tone, allowing the callers to make unrestricted long distance telephone calls over C & W's long distance network. These calls, totaling approximately $98,000, were charged to PayPhone's account by C & W.

On December 14, 1999, PayPhone filed suit in Rhode Island Superior Court against BFC–RI and C & W for negligence and breach of contract. PayPhone's complaint alleged that BFC–RI's switch

---

1. The exact nature of the agreement between PayPhone and C & W is disputed. PayPhone contends that C & W was contractually bound to provide long distance carrier service. *See* Pl.'s Compl., ¶ 4. Although it admits that it provides services as a long distance carrier, C & W denies that it performs these services pursuant to contract. *See* Def.'s Answer, ¶ 4.

should have recognized the toll-free number as invalid, and terminated the calls by returning a busy signal or otherwise indicating that the calls could not be completed. Plaintiff also alleged that C & W was aware that PayPhone's telephones were programmed to require all direct-dialed international calls to be placed through a live operator, and that C & W was aware that a large number of calls were placed in a manner inconsistent with this restrictive feature. Therefore, PayPhone alleged that C & W should have terminated all of these direct-dialed international calls.

On January 14, 2000, BFC–RI removed the case to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1441 (1994); 28 U.S.C. § 1332 (1994). In response, PayPhone moved to remand the case to state court, and a hearing on the motion to remand was held before the Magistrate Judge on May 16, 2000.

The primary issue in dispute at the hearing was BFC–RI's principal place of business, and consequently, its citizenship for purposes of diversity jurisdiction. Plaintiff argued that BFC–RI is a citizen of Rhode Island because it maintains its principal place of business in Rhode Island. Therefore, plaintiff claimed that the case should be remanded due to lack of subject matter jurisdiction. BFC–RI responded by claiming that BFC–RI and its great-grandparent corporation, MCI WorldCom, disregarded their separate corporate identities. BFC–RI argued that, as a result, the court should determine that BFC–RI's principal place of business is Mississippi, where MCI WorldCom is located.

Ruling from the bench, the Magistrate Judge concluded that: (1) BFC–RI and MCI WorldCom disregarded their separate corporate identities, (2) under those circumstances the court could consider the corporate activities of MCI WorldCom and BFC–RI in determining BFC–RI's principal place of business, and, (3) BFC RI carried the burden of showing that BFC–RI "should not be viewed as having its principal place of business in Rhode Island because of its relationship with MCI WorldCom and other affiliated entities." Mot. Hr'g Tr., May 16, 2000, p. 9. He then entered an order dated May 16, 2000 denying PayPhone's motion to remand.

PayPhone subsequently filed a timely appeal from the Magistrate Judge's order denying remand to state court. On June 13, 2000, this Court heard oral arguments and took the matter under advisement. The matter is now in order for decision.

II. Discussion

A magistrate judge's decision on a nondispositive motion is reviewed to determine if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1994); Fed.R.Civ.P. 72(a). A motion to remand is considered nondispositive in this District. *See Donato v. Rhode Island Hosp. Trust Nat'l Bank,* 52 F.Supp.2d 317, 323 (D.R.I. 1999); *Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island,* 942 F.Supp. 740, 745 (D.R.I.1996). Therefore, the Court must determine if the Magistrate Judge's decision to deny PayPhone's motion to remand was clearly erroneous or contrary to law.

A district court has subject matter jurisdiction over any lawsuit where there is complete diversity of citizenship between plaintiffs and defendants and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332(a) (1994)(2000 Supp.). For purposes of diversity jurisdiction, a corporation is a citizen of the state where it is incorporated as well as the state where it has its principal place of business. *See id.* at 1332(c).

In the First Circuit, the determination of a corporation's principal place of business is reached through the application of "three distinct, but not necessarily inconsistent tests." *Topp v. CompAir Inc.,* 814 F.2d 830, 834 (1st Cir.1987). The "nerve center" test focuses on the place from which the corporation's activities are controlled, the "center of corporate activi-

ty" test focuses on the location of the corporation's day-to-day management, and the "locus of operations test" focuses on the location of the actual physical operations of the corporation. *See id.*

Although each test differs slightly, all three tests require the district court to confine its inquiry to the activities of the corporation whose principal place of business is at issue. This rule applies in the context of parent and subsidiary corporations, with one exception. As stated by the First Circuit:

> [P]ertinent circuit authority, particularly our opinions in *Topp* and de *Walker,* stand for the following two unremarkable propositions: (1) that in determining a corporation's principal place of business, a district court's inquiry must focus *solely* on the business activities of the corporation whose principal place of business is at issue; and (2) that an exception to this general rule applies where there is evidence that the separate corporate identities of a parent and subsidiary have been ignored. *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 62–63 (1st Cir.1993).

Whether or not the exception can be applied by BFC–RI is the critical issue to be determined by this Court. The Magistrate Judge was persuaded that the exception could be applied, and as a result, he determined BFC–RI's principal place of business with reference to the corporate activities of both BFC–RI and MCI World-Com. However, this Court is not similarly persuaded, and must conclude that the decision of the Magistrate Judge is contrary to law on two grounds. First, the exception cannot be applied by BFC–RI because a corporation may not pierce its own corporate veil for its own benefit. Second, the evidence demonstrates that BFC–RI and MCI WorldCom maintain separate corporate identities. As a result, it was improper for the Magistrate Judge to consider evidence of MCI WorldCom's activities when determining BFC–RI's principal place of business.

## A. Piercing the Corporate Veil

The First Circuit has adopted the rule that a corporation may not pierce its own veil or apply the alter ego doctrine for its own benefit. *See McCarthy v. Azure,* 22 F.3d 351, 362–63 (1st Cir.1994). This rule applies with equal force to a corporation seeking to pierce its own veil in order to create diversity jurisdiction. *See Panalpina Welttransport GmBh v. Geosource, Inc.,* 764 F.2d 352 (5th Cir.1985); *Fritz v. American Home Shield Corp.,* 751 F.2d 1152 (11th Cir.1985). Therefore, BFC–RI as a matter of law should have been prohibited from advancing the argument that its separate corporate existence should be ignored. There are two sound reasons for this rule. First, the alter ego and corporate veil piercing doctrines are equitable in nature. Consequently, the right to apply either doctrine is reserved to aggrieved third parties. *See id.* (citing *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458 (5th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 697 (2d Cir.1989); *In re Rehabilitation of Centaur Ins. Co.,* 238 Ill.App.3d 292, 179 Ill.Dec. 459, 606 N.E.2d 291, 296 (1992), *aff'd,* 158 Ill.2d 166, 198 Ill.Dec. 404, 632 N.E.2d 1015, 1018 (1994)).

Second, permitting a corporation to add places of citizenship in order to establish or preserve diversity jurisdiction would thwart the intent of Congress to limit federal diversity jurisdiction. The multiple corporate citizenship provided for in 28 U.S.C. § 1332(c) was intended to reduce the federal court diversity caseload. *See Reid v. Boyle,* 2 F.Supp.2d 803, 807 (D.Va. 1998). Moreover, a corporation is deemed to be a citizen of the state where it has its principal place of business because that is the state where "its public contacts are most numerous, and thus where litigation will take place most frequently." Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, 13B Federal Practice and Procedure § 3625 at 632 (1984). For these reasons, a corporation should not be per-

mitted to add places of citizenship in order to create diversity jurisdiction where it would not exist otherwise.

■ On appeal to this Court, BFC–RI argues that the exception stated in the *Taber* case does not involve the alter ego doctrine or veil piercing analysis. The Court disagrees with BFC–RI's assertion. In fact, the cases relied on by BFC–RI all involve situations where a third party sought to pierce the corporate veil. *See, e.g. Taber Partners, I v. Merit Builders,* 987 F.2d 57, 63 (1st Cir.1993)(third party defendants failed to present evidence that the two corporate partners usurped the role of managing the partnership business); *Topp v. CompAir Inc.,* 814 F.2d 830, 837 (1st Cir.1987)(plaintiff failed to show parent and subsidiary corporate defendants ignored their separate corporate forms); *de Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1173 (1st Cir.1978)(plaintiff failed to show that the corporate forms of the parent and subsidiary were ignored by the defendant). Thus, the distinction BFC–RI attempts to draw between disregarding separate corporate identities and corporate veil piercing is illusory, and will not be given credence by this Court.

■ This Court also concludes that BFC–RI is prevented from piercing the corporate veil for its own benefit by the doctrine of equitable estoppel. Because this case was removed to the district court on the basis of diversity jurisdiction, the Court must apply Rhode Island law on equitable estoppel. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Spurlin v. Merchants Ins. Co.,* 57 F.3d 9, 10 (1st Cir.1995). Under Rhode Island law, equitable estoppel requires proof of an affirmative statement or conduct by the person against whom the estoppel is claimed which is directed at the person seeking to establish the estoppel, and that the statement or conduct actually induces the other to act or fail to act to his injury. *See El Marocco Club, Inc. v. Richardson,* 746 A.2d 1228, 1233 (R.I.2000);

*Lichtenstein v. Parness,* 81 R.I. 135, 99 A.2d 3, 5 (1953).

■ In 1996, BFC–RI received authorization to do business in Rhode Island as a competitive local exchange carrier from the Rhode Island Public Utilities Commission ("P.U.C."). *See* Response of Defendant Brooks Fiber Communications of Rhode Island, Inc. to Plaintiff's Notice of Deposition Pursuant to Rule 30(b)(6), p. 6 (hereinafter "Response of Defendant BFC–RI"). In seeking this authorization, BFC–RI represented to the P.U.C. that Rhode Island was the only state in which it would do business.

In 1998, when the Brooks Fiber conglomerate merged with MCI WorldCom, BFC–RI and MCI WorldCom received the consent and approval of the P.U.C. as required by Rhode Island General Laws § 39–3–24(2) (1956)(1999 Supp.). At that time, BFC–RI and MCI WorldCom represented that BFC–RI would continue operating as a separate corporation after the merger.

Thus, BFC–RI made affirmative representations that it would only conduct business in Rhode Island and that it would continue to operate as a separate corporation after its merger with MCI WorldCom. Although these representations were made directly to the P.U.C., they were also made to the public at large. As a practical matter, BFC–RI held itself out as a local corporation in the business of providing local exchange carrier services, and Pay-Phone was thereby induced to contract with BFC–RI for its services. If BFC–RI were permitted to recharacterize itself as a corporation that does not have its principal place of business in Rhode Island, Pay-Phone would be misled to its detriment. Therefore, the elements of equitable estoppel are satisfied and BFC–RI is estopped from contending that it does not have its principal place of business in Rhode Island.

The Court's conclusion that BFC–RI may not pierce its own corporate veil in

order to establish diversity jurisdiction is dispositive of this appeal. However, the Magistrate Judge's conclusion that BFC–RI and MCI WorldCom failed to maintain separate corporate identities provides this Court with an alternate basis for concluding that the decision to deny remand is contrary to law.

### B. Separate Corporate Identities

■ As stated previously, a court may only consider the corporate activities of the corporation at issue in determining that corporation's principal place of business. *See Taber*, 987 F.2d at 62–63. The sole exception to this rule arises where there is evidence that a parent and subsidiary failed to maintain their separate corporate identities. *See id.*

The Magistrate Judge concluded that BFC–RI and MCI WorldCom failed to maintain their separate corporate identities. Accordingly, he considered the corporate activities of both BFC–RI and MCI WorldCom when determining BFC–RI's principal place of business. This Court concludes that BFC–RI and MCI WorldCom did maintain their separate corporate identities as a matter of law.

■ The First Circuit has repeatedly stated that the separate corporate identities of a parent and subsidiary are entitled to recognition as long as the two corporations observe corporate formalities. *See Taber*, 987 F.2d at 61 (citing *U.S.I. Properties Corp. v. M.D. Const. Co., Inc.*, 860 F.2d 1, 7 (1st Cir.1988), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629; *Rodriguez v. SK & F Co.*, 833 F.2d 8, 9 (1st Cir.1987); *Topp*, 814 F.2d at 833; *Lugo–Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 43–44 (1st Cir.1978); *de Walker*, 569 F.2d at 1170–73).

■ Therefore, the issue to be resolved by the Court is whether BFC–RI and MCI WorldCom observed corporate formalities.

The factors used to make this determination are whether the two corporations: (1) were separately incorporated, (2) had separate boards of directors, (3) kept separate accounting and tax records, and (4) had separate facilities and operating personnel. *See de Walker*, 569 F.2d at 1171.

■ BFC–RI and MCI WorldCom are separately incorporated. BFC–RI is incorporated in Delaware, while MCI WorldCom is incorporated in Georgia. In addition, Brooks Fiber Properties, Inc. and BTC Finance Corporation, the two intermediary corporations through which BFC–RI is owned by MCI WorldCom, [2] are separately incorporated in Delaware.

It is unclear from the record whether BFC–RI and MCI WorldCom share the same board of directors. BFC–RI submitted evidence that BFC–RI's officers are also employed as senior officers of MCI WorldCom. *See* Decl. of Joseph P. Dunbar, p. 3. However, the officers of a corporation and the directors of a corporation comprise two different groups. Therefore, BFC–RI did not submit any evidence that would enable this Court to determine whether the parent and subsidiary share the same board of directors.

MCI WorldCom prepares all federal and state tax returns and pays all taxes on behalf of BFC–RI. *See id.* MCI WorldCom also pays all filing fees required by the Rhode Island P.U.C. *See id.* Although these expenses are paid out of MCI WorldCom's coffers, they are paid *on behalf of* BFC–RI. This distinction is important, for it demonstrates that MCI WorldCom treats BFC–RI as a separate corporation, and that separate accounting and tax records are maintained for each corporation. Moreover, all necessary licenses and permits are held in BFC–RI's name. *See id.* This also indicates that the two corporations preserve their separate corporate identities.

---

**2.** Specifically, BFC–RI is a wholly-owned subsidiary of BTC Finance Corporation, which is a wholly-owned subsidiary of Brooks Fiber Properties, Inc., which is a wholly-owned subsidiary of MCI WorldCom.

BFC–RI does not have any employees, and it does not maintain separate management offices in Rhode Island. However, BFC–RI does maintain numerous facilities in Rhode Island that enable it to provide services as a competitive local exchange carrier. BFC–RI is the lessee of twenty-one local pops,[3] one local switch, one HUB, and one warehouse. *See* Response of Defendant BFC–RI, p. 2–5. Thus, BFC–RI maintains separate facilities.

A parent and subsidiary can maintain their separate corporate identities without satisfying every one of these factors. In fact, the First Circuit has recognized the separate corporate identities of a parent and subsidiary in cases where the degree of involvement between the two corporations was much more extensive than exists in the present case.

For example, in *U.S.I. Properties Corp.*, the First Circuit held that separate corporate identities were maintained even though the corporation at issue was a wholly-owned subsidiary of the grandparent corporation, the grandparent corporation set the subsidiary's policy and prepared its budget, the subsidiary was grossly undercapitalized, and both corporations had the same officers and directors. *See* 860 F.2d at 7.

The First Circuit also held that separate corporate identities were also maintained by the parent and subsidiary corporations in *de Walker*. In that case, the parent corporation "routinely included [the subsidiary's] figures in its calculations of overall profits, losses, expenses, numbers of employees, real estate, etc." 569 F.2d at 1171. In addition, the parent corporation's board of directors closely scrutinized the subsidiary's operations, even choosing the subsidiary's president. *See id.* Nevertheless, the Court found that because the two corporations kept separate books for accounting and tax purposes, the separate corporate identities were entitled to recognition.

In this case, it is clear that MCI WorldCom exerts a substantial degree of control over BFC–RI. The Magistrate Judge found that this degree of control, coupled with the fact that BFC–RI has no employees, required a finding that the two corporations disregarded their separate corporate identities. However, in the context of a parent-subsidiary relationship, a certain degree of control over the subsidiary is merely an incident to the full ownership of the subsidiary. The First Circuit has made clear that this fact "is insufficient, without more, to justify ignoring the separate corporate entities." *Topp*, 814 F.2d at 837. In addition, this fact is entitled to even less weight when a party urges that several separate corporate identities be ignored. *See id.* This is the case here, where BFC–RI essentially urges this Court to ignore the separate corporate identities of BRC–RI, BTC Finance Corporation, Brooks Fiber Properties, Inc., and MCI WorldCom.

In short, this Court is of the opinion that BFC–RI and MCI WorldCom maintained their separate corporate identities. As a result, it was error for the Magistrate Judge to look outside the scope of BFC–RI's business activities in determining BFC–RI's principal place of business. Because the Magistrate Judge did not limit his inquiry to an examination of BFC–RI's corporate activities, this Court must now determine BFC–RI's principal place of business.

### C. The Principal Place of Business

At the outset, the Court notes that the nerve center test does not apply in this case. This test, which is frequently applied to holding companies, was "developed for cases involving corporations with 'complex and farflung activities.'" *Topp*, 814 F.2d at 834 (quoting *de Walker*, 569 F.2d at 1172). BFC–RI is neither a holding company nor a corporation with complex and farflung activities. Therefore, the nerve center test

---

**3.** A "local pop" is a technical space ranging in size from 100 to 300 square feet that hous-

es the equipment used to provide service to customers within a building.

is not helpful in determining BFC–RI's principal place of business.

The second test used in determining a corporation's principal place of business is the center of corporate activity test, which focuses on the location of the corporation's day-to-day management. The evidence in the record demonstrates that BFC–RI's officers are based out of MCI WorldCom headquarters in Clinton, Mississippi. However, the account manager responsible for overseeing PayPhone's account is located in Boston, Massachusetts. In addition, BFC–RI stated that all other day-to-day management functions, such as account supervision by the account manager, customer service, human resources, accounting, billing, and legal services, are performed from various locations by employees of MCI WorldCom Communications, Inc., MCI WorldCom Network Services, Inc., or other MCI WorldCom affiliates. *See* Decl. of Joseph P. Dunbar, p. 2–3.

This Court may only consider the business activities of BFC RI, the corporation whose principal place of business is at issue, in determining the location of BFC–RI's center of corporate activity. *See Taber*, 987 F.2d at 62–63. Therefore, the management activities performed by employees of corporations other than BFC–RI cannot be considered by this Court in determining where BFC–RI's center of corporate activity lies. As a result, application of the center of corporate activity test would lead the Court to the conclusion that BFC–RI's principal place of business is in Mississippi, the location where BFC–RI's officers maintain their offices.

Nevertheless, this Court is not persuaded that BFC–RI's principal place of business is in Mississippi. Instead, the Court concludes that the locus of operations test, which focuses on the location of the corporation's actual physical operations, is the appropriate test for determining BFC–RI's principal place of business in this case.

BFC–RI is engaged in the business of providing services as a competitive local exchange carrier. It is only authorized to do business in Rhode Island, all of its customers are located in Rhode Island, and it does not sell services or derive revenue from any state other than Rhode Island. *See* Response of Defendant BFC–RI.

Therefore it comes as no surprise that all the facilities and equipment that BFC–RI must maintain to provide telecommunications services in Rhode Island are located in Rhode Island. BFC–RI leases twenty-one local pops, a hub, and a warehouse, all of which are located at various sites in Providence, Rhode Island. BFC–RI also owns fiberoptic cable, switches, and other telecommunications equipment located in Rhode Island. BFC–RI maintains six fiber rings that extend to the municipalities of Lincoln, Woonsocket, and Pawtucket, Rhode Island. In addition, BFC–RI maintains "appropriate licenses, permits, tariffs, and agreements in Rhode Island in order to service its existing local customer base." Decl. of Joseph P. Dunbar, p. 2.

Application of the locus of physical operations test clearly requires this Court to conclude that BFC–RI's principal place of business is in Rhode Island. Any other conclusion would ignore the basic fact that the only state in which BFC–RI conducts business is Rhode Island. Accordingly, this Court concludes that BFC–RI has its principal place of business in Rhode Island and it is, therefore, a citizen of Rhode Island for purposes of diversity jurisdiction.

III. Conclusion

For the foregoing reasons, this Court concludes that the Magistrate Judge's order denying PayPhone's motion to remand to state court is contrary to law. Because PayPhone and BFC–RI are both citizens of Rhode Island, complete diversity of citizenship between the parties does not exist. Therefore, this Court does not have subject matter jurisdiction over this case. Ac-

cordingly, the appeal is sustained and the motion to remand is granted.

This case, hereby, is remanded to the Rhode Island Superior Court.

It is so ordered.